## JOSEF HLADOVEC

### *v.*

## FRANK PAUL *et al.*

*Opinion filed June 14, 1906—Rehearing denied October 11, 1906.*

1. INJUNCTION—*when a bill to enjoin a mandamus suit may be maintained.* Stockholders whose rights in unissued stock in a corporation depend upon a contract between them and the plaintiff in a *mandamus* suit brought to compel the officers of the corporation to issue the stock to him, to which suit such stockholders are not parties, may maintain a bill to enjoin the plaintiff from asserting any claim to or receiving the unissued stock and from further prosecuting the *mandamus* suit.

2. CORPORATIONS—*when contract for use of old charter is not invalid.* . An agreement between the person controlling all the stock of a corporation and the persons about to organize a new corporation, that the charter of the old corporation should be used and the stock in the old corporation issued to the stockholders in the new corporation in amounts of ten shares each, and no more, so that each might share equally in the result of the enterprise, is not against public policy, as being in restraint of the free sale and transfer of stock.

3. SAME—*what is sufficient consideration for agreement to issue stock.* Mutual agreements between parties to form a brewing corporation in order that the stockholders might obtain beer for their retail trade at low prices, and to use the charter of a corporation in which one of their number controlled all the stock, are sufficient consideration, when acted upon, for the agreement of such person that the stock which he controlled should be issued to the new stockholders so that each would own ten shares and no more, and they can not be deprived of the benefits of the re-organization on that basis upon the ground that a release of the party's original subscription to the stock of the old corporation would be void as against that corporation.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

This is an appeal from a judgment of the Branch Appellate Court for the First District reversing a decree of the circuit court of Cook county upon a bill filed in that court by the appellees, against the appellant and others, and remanding the cause, with directions to the circuit court to enter a decree in conformity with the opinion of said Branch Appellate Court.

The bill was filed by seventy-six stockholders of the Garden City Brewery, a corporation organized under the laws of this State, against said corporation, the appellant, Josef Hladovec, and Vaclav Topinka, Joseph Hodek, as executor of the last will and testament of Vaclav Hodek, deceased, and the president, secretary and treasurer of said

corporation, and averred, in substance, that on February 24, 1891, the Josef Hladovec Brewing Company was organized under the laws of Illinois with a capital stock of $150,000, represented by fifteen hundred shares of stock, the value of which was fixed at $100 per share. Its object was to manufacture and sell beer, its duration ninety-nine years, and its principal office in the city of Chicago. Hladovec subscribed for a thousand shares, and Topinka and Hodek each subscribed for two hundred and fifty of the remaining five hundred shares of said capital stock. The three selected themselves directors, and the corporation proceeded to business. It acquired a brewing plant and began to manufacture and sell beer. The business was not successful, and shortly thereafter the brewing plant was disposed of and the corporation retired from business. In the year 1901 forty-one of the appellees, complainants herein, together with the appellant, Hladovec, all of whom were engaged in selling beer at retail, which they were in the habit of purchasing from various brewing companies, determined to organize for themselves a corporation to manufacture and sell beer for their retail business at cheaper rates. They formulated a plan in accordance with which the capital stock of the new corporation should be equally divided between them and such other persons as from time to time they might permit to become stockholders, the intention being that no stockholder should acquire more than ten shares of stock and that the stockholders should all be persons engaged in the sale of beer at retail. Before application had been made to the Secretary of State for a license to organize the proposed corporation, Hladovec represented to his associates in the enterprise that it was unnecessary to create a new corporation, because the charter of the Josef Hladovec Brewing Company could then be adapted to the purpose they had in view; that he was the owner or had control of all the subscriptions to its capital stock and that the original subscribers would release all rights; that in lieu of the shares of stock being issued to

said original subscribers, Hladovec, Topinka and Hodek, certificates might issue in lots of ten shares each to the new associates in said enterprise who paid into the treasury of the corporation $1000, and to such other persons as might thereafter be permitted to become stockholders of said corporation, until the entire capital stock of said corporation should be issued. The proposition to revive the old corporation was accepted, and it was agreed *inter alia* that each person thereafter permitted to become a stockholder should pay into the treasury for each ten shares of stock issued to him, such sum, not less than $1000, as might be from time to time fixed by the board of directors of said corporation. In accordance with the agreement the name of the corporation was changed from Josef Hladovec Brewing Company to Garden City Brewery; the number of its directors was increased from three to eleven; Topinka, Hodek and Hladovec released their rights, respectively, under their original subscription to the capital stock, and agreed that neither of them would assert any rights nor claim any right to have certificates issued to them under their original subscriptions, and that the stock of the corporation should be issued thereafter and disposed of in accordance with the agreement between the parties. The parties to the agreement proceeded with the enterprise. Seven hundred and eighty shares of the stock of the corporation in all have since been issued. Of this number, five hundred and twenty were issued to and paid for by stockholders at the rate of $100 per share, one hundred and forty at the rate of $125 per share, one hundred at the rate of $150 per share and twenty at the rate of $200 per share, making in all $88,500 which has been paid into the treasury of the corporation as a part of the capital stock of the company since its re-organization and under and in accordance with the agreement then made, to which Hladovec was a party. Since the election of the first board of eleven directors the corporation has purchased real estate in the city of Chicago, has erected a brewing plant thereon and

carried on the business of manufacturing and selling beer to its stockholders and others. The business has been exceedingly profitable and advantageous to the stockholders, both on account of the earnings of the company and from the fact that the stockholders, by reason of their ownership of stock, have been able to purchase beer for their retail trade at much lower prices than they would otherwise have been compelled to pay. The total indebtedness of the corporation does not exceed $38,000, $37,000 of which represents outstanding bonds of that amount not yet due or payable. The fair cash value of all of its assets exceeds $200,000, and it is averred that for the purpose of its stockholders who are engaged in selling beer at retail, the stock is now worth several times its par value. Hladovec has participated, either as director or otherwise, in the management of the corporation from the time of re-organization, and has held out to each of the complainant stockholders that the agreement that each stockholder should be the owner of ten shares, and no more, was valid and binding, and neither he nor any other stockholder had any right to acquire, in any manner or form, more than ten shares of the capital stock. It is alleged that strict adherence to this agreement is of the utmost importance to complainants and other stockholders interested in the success of the business, and that a departure from its terms would be detrimental to the stockholders' interests and bound to defeat the purpose for which the corporation exists. It is alleged that on the 15th day of August, 1904, Hladovec, unmindful of his agreement and desiring to repudiate it, filed a petition for *mandamus,* claiming that under the original subscription, and by assignment of the rights of Topinka and Hodek, he had become entitled to have issued to him, in person, the entire unissued seven hundred and twenty shares of the capital stock of said corporation, having made tender of $72,000 in payment of its par value, and seeking to compel the officers of the corporation to issue said remaining shares to him.

The bill prays for an injunction restraining Hladovec from asserting any claim to, or receiving or taking steps to cause to be issued to him, any of the shares of stock in said Garden City Brewery other than the ten shares which he now owns, and from the further prosecution of his petition for *mandamus,* and prays that the court declare and decree neither Hladovec, nor any person claiming under him, or the other original subscribers to the capital stock of the Josef Hladovec Brewing Company, have any right, title or interest in or to any portion of the unissued capital stock of said corporation, and that the said Hladovec, and all persons claiming under him, or the other original subscribers, be required to execute and deliver to the Garden City Brewery proper instruments in writing releasing to said corporation all claims, of every kind and character, to the seven hundred and twenty shares of stock in controversy.

To this bill the defendants Hladovec, Topinka and the executor of the will of Hodek, deceased, filed a joint and several demurrer, the other defendants having been defaulted. The demurrer having been overruled, Hladovec elected to abide by it. Topinka and the executor of the last will and testament of Hodek, deceased, filed disclaimers. By the decree Hladovec is restrained from asserting any claim, of any kind or character, to, or receiving or taking any steps to cause to be issued to himself, the seven hundred and twenty shares of capital stock in controversy, or any part thereof, under or by virtue of the original subscription therefor, and from the further prosecution of the petition for *mandamus* referred to, and he is released and discharged from further liability to the corporation on account of his original subscriptions to its capital stock. The Branch Appellate Court held that the appellees were entitled to an injunction restraining Hladovec from asserting, at law or otherwise, his alleged claim to have said seven hundred and twenty shares of stock issued to him for his benefit, and found that he held the legal title thereto in trust for the

benefit of himself and the other stockholders or persons who might hereafter become stockholders in said corporation, who were the equitable owners thereof, and that the decree of the circuit court was erroneous in so far as it held the appellant had no interest in said unissued stock, and in so far as it undertook to release and discharge the appellant from all liability to the corporation upon said unissued stock.

JOHN S. COOPER, W. P. THORNTON, and EDWIN G. LANCASTER, for appellant.

SIDNEY S. POLLACK, EDWARD J. NOVAK, and HIRAM T. GILBERT, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

The first contention made by the appellant is, that a court of equity is without jurisdiction to grant to the appellees the relief prayed for in the bill filed herein, on the ground that they have a complete and adequate remedy at law, in this: that the grounds averred in their bill for equitable relief can be pleaded as a defense to the action of *mandamus,* wherein the officers of the corporation were sought to be coerced by appellant to issue to him said unissued shares of stock, if the grounds of relief averred in the bill have a valid existence in law. The stockholders of the corporation who are the complainants in this bill were not parties to the *mandamus* suit, and their rights in the unissued stock of said corporation, if any, could not be set up by them in said suit, neither could the appellees require the officers of said corporation to set up their rights in said unissued stock as a defense to the relief sought in said *mandamus* suit. The interest of the appellees in the unissued stock, if any, grows out of a contract with appellant to which the corporation was not a party, and we think the appellees can maintain a bill, as against appellant, to establish their interest in said stock and prevent the stock being issued to him by the corporation.

It is next contended that the agreement of the appellant to transfer to the appellees and other vendors of beer his subscription to said stock, and that the stock might be issued to them instead of to him, was upon the consideration that he should be released from liability to the corporation upon his subscription for said stock, and that as said agreement to release him from such liability was void, the consideration for the agreement to transfer his subscription for said stock to appellees and other vendors of beer who might desire to take stock had failed, and he was not bound to carry out his agreement with the appellees or such vendors of beer as might desire to take stock in said corporation, and that he was entitled to have said stock issued to him by the corporation upon the payment to it of the amount of his original subscription for said stock. The bill does not aver that appellant was to be released by the corporation from liability upon said subscription in consideration of the release to appellees or other stockholders of his subscription to said stock, and, as we understand the averments of the bill, the release of appellant from liability upon said stock subscription was not the consideration moving from appellees and other persons taking stock, to the appellant for the release to them of said subscription, but the consideration was that the appellant and appellees, and other vendors of beer, would form a corporation of which they should be stockholders, the object of said corporation being the manufacture and sale of beer, which should be mainly sold to its stockholders at prices below the general wholesale prices at which beer could be purchased from other manufacturers of beer, and that upon the suggestion of appellant the charter of the Josef Hladovec Brewing Company was used to effect such organization, with the understanding that Hladovec controlled the subscriptions to all the stock, and that the stock should be issued so that the original and subsequent stockholders of the reorganized corporation should each hold ten shares of said stock and no more, and that in the consummation of said

plan nothing was said or agreed upon as to the liability of appellant to the corporation as an original subscriber for said stock. This conclusion must necessarily follow from a consideration of all the averments of the bill, as from these averments it nowhere appears that the corporation was a party to the plan of re-organization, but that the contract with reference to the re-organization was a contract made between Hladovec and the appellees, and that the only part the old corporation played in the re-organization scheme was, that its charter was used to effect the re-organization. We think the mutual agreements of the parties to form a new corporation, and the subsequent agreement to use the charter of the old corporation and to invest the moneys of the new stockholders in the enterprise, were a sufficient consideration moving from the appellees to the appellant to support the agreement of the appellant that the stock of the old corporation which he controlled should be issued to the new stockholders if the old charter should be used, in such manner that each stockholder should be the holder of ten shares and no more, and that the parties to the re-organization, and the subsequent stockholders who joined the enterprise, can not be deprived of the benefits of the re-organization on the ground that the promise of the appellant to release the right to the stock which he acquired by the original subscription was void for want of a consideration.

It is finally contended that the agreement of the parties that each stockholder should have issued to him ten shares of stock, and no more, is void, as it is said such agreement is in restraint of the free sale and transfer of the stock of said corporation, which is in contravention of public policy. It has been held that a by-law of a corporation which clogs the sale and transfer of the stock of a corporation is void, (*McNulta* v. *Corn Belt Bank,* 164 Ill. 427,) as being contrary to public policy. Here, however, we are not dealing with a by-law of a corporation, but a contract made by appellant with appellees, and which was to inure to the benefit,

not alone of appellees, but such other persons as might thereafter become stockholders of said corporation, to which the corporation was not a party. We see no reason why a number of persons in trade, such as vendors of beer, may not engage in manufacturing the beer they sell their customers, and to that end each contribute an equal portion of the capital used in the manufacture thereof, and share equally in the management of the business and the profits and losses incident to the business. Such an arrangement would make the parties to the enterprise partners and the enterprise a partnership undertaking. If parties can thus agree to carry on such an enterprise as a partnership, why may not they incorporate under the statute and carry the business on through the medium of a corporation? While an agreement limiting the number of shares which should be issued to each stockholder would not be binding upon the corporation, we know of no reason why it would and should not bind the parties to the agreement.

In *Kantzler* v. *Bensinger,* 214 Ill. 589, a very similar contract to the one now under consideration was before this court, which was sustained. In that case shareholders of a corporation entered into a contract whereby it was provided that certain persons should be elected to the offices of the corporation for a fixed period, and it was contended, as here, said contract was contrary to public policy and void. The court, in discussing such contention, on page 598, said: "The contract was entered into by all the stockholders of the corporation, and while it might not have bound the board of directors afterwards elected, we think there is no reason in law why it should not be held to be binding upon the defendants and enforceable against them. The entire stock of the corporation was held by the plaintiffs, and in making a contract with the defendants whereby the latter were to obtain at once six-tenths of said stock, it was open to the parties to make any arrangements with regard to the management of the company mutually agreeable to them. The price to be

paid for the stock was a matter to be determined by them, and by them only. They owned all the property represented by the stock, and the mere fact that it was represented by corporate stock could make no difference. No other person had any interest in it and no one else could complain. Instead of paying a different price than that agreed on for the stock not then to be transferred, it was mutually agreed that the plaintiffs should continue in their old official positions for five years, with an increase of salary."

In this case the appellant, according to the averments of the bill, induced the appellees to invest their money in the shares of stock of the said corporation on the ground that he controlled the subscriptions to all its shares of stock and would release the right to have the same issued to himself, and that the same might be issued in blocks of ten shares to the appellees, and such other persons as might become stockholders, and at such prices as the board of directors might determine. It appears the business of the corporation has been successful. Seven hundred and eighty shares of stock have been issued and $88,500 paid therefor into the treasury of the corporation. Three years after the re-organization, and when the remaining seven hundred and twenty shares are of the value of $144,000 cash, the appellant seeks to repudiate the agreement he made with appellees and require said unissued shares to be issued to him at one-half their value. The position of the appellant is inequitable, and we are of the opinion the Appellate Court properly held he was not entitled to have said seven hundred and twenty shares of stock issued to him.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*