JOHN FAULDS

*v.*

WILLIAM YATES *et al.*

1. CONTRACTS—CORPORATIONS—*of a combination between a portion of the members of a corporation to control it.* Three persons owning a majority of the stock of an incorporated company organized for the purpose of mining coal upon their lands, and having leased the premises, formed a partnership for the prosecution of the business, entered into an agreement, as between themselves, that they would elect the directors of the company; that they would determine among themselves as to its officers and management, and that if they could not agree, they would ballot among themselves for the directors and officers, and that the majority should rule, and their vote be cast as a unit, so as to control the election: *Held*, this agreement was not void, as against public policy; the persons owning a majority of the stock had a right to combine, and thus secure the board of directors and the management of the property.

2. PARTNERSHIP—*real estate.* Real estate belonging to a partnership will, in equity, be treated like its personal funds, and distributed accordingly. If the title stands in the name of one of the partners, he will be held as a trustee of the partnership, and be made to account to the other partners according to their several rights and interests.

3. So where one of three partners purchased real estate for the partnership, each contributing his proportion of the purchase money, but the

purchasing partner took the title in his own name, upon a dissolution of the partnership, and a settlement of its affairs, in chancery, it was held proper to compel the partner holding the title to convey to each of the others his proportionate interest.

4. SAME—*where the purchasing partner has received an undue proportion of the purchase price.* And where the partner who made the purchase, represented to his co-partners the purchase price he had agreed to pay to be greater than was the fact, and they agreed to pay, and did pay, their proportion according to such false representation, yet upon seeking to compel a conveyance, in equity, the partners so contributing more than their proper share, would not be entitled to be reimbursed for that excess. Where a conveyance of land is asked, it must be granted upon the specific terms of the agreement.

5. PARTIES—*in chancery.* Where a part of the members of an incorporated company form a partnership between themselves for the purpose of carrying on the business of the company, under a lease, upon bill filed by one of the partners for a dissolution and a settlement of the partnership affairs, the corporation is neither a necessary nor a proper party.

WRIT OF ERROR to the Circuit Court of Iroquois county; the Hon. CHARLES H. WOOD, Judge, presiding.

Messrs. DENT & BLACK, and Mr. EDWARD H. BRACKETT, for the plaintiff in error.

Mr. W. BUSHNELL, and Mr. J. C. CHAMPLIN, for the defendants in error.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The Chicago Carbon and Coal Company, a corporation organized under a special law, issued certain shares of stock. A majority of the shares were purchased by plaintiff in error. The company owned a large amount of lands, valuable for coal, and had leased them to one Kirkland until May 1st, 1866, with the privilege of a renewal for three years, in consideration of 15 cents per ton for each ton of coal mined, until the opening of certain new mines by the company. After that he was to

27—57TH ILL.

pay $5000 per year as rent for the demised premises. Kirkland assigned this lease to Faulds, Yates and Bunn, and this transfer was approved and consented to by the company, by a resolution entered upon its minutes, on the 31st of January, 1866. They assumed, by an indorsement on the lease, all the responsibility and liability which Kirkland was subject to by virtue thereof.

On the 1st of February, 1866, Faulds, Yates and Bunn executed articles of co-partnership, in which the stock owned by Faulds was valued at $60,000, and Yates and Bunn agreed to purchase two-thirds of it for $40,000, and Faulds was to superintend the mining operations, and Yates and Bunn to furnish two capable men to sell coal, and generally manage the financial affairs of the concern; and it was expressly understood that each party was to be equally interested in the business. These parties embarked their money, in equal proportions, in the purchase of this lease, for the purpose of prosecuting mining operations, and the development of the mineral resources of the Chicago and Carbon Coal Company. The written agreement constituted essentially a partnership. It was a voluntary contract, between persons, to place their money in a lawful business, and to share the profits and loss in equal proportions.

The shares of stock purchased by defendants in error were paid for, and after the formation of the partnership the mining operations commenced, and continued until December, 1866. During this time the defendants in error furnished to Faulds over $19,000, which were used by him in carrying on the business. This amount was expended by him, and yet no profits were realized by Yates and Bunn; and Faulds failed to pay his share, or indeed any part, of the expenditures.

After the formation of the partnership, Faulds purchased the "Sanger tract" of land, as it is known in the record, for $8,000, but represented to Yates and Bunn that he had paid for the same $9000; that this tract was essential to their successful operations; and induced them to purchase two-thirds

of the tract at $6000, which they paid, but received no deed to the land. The agreement was, that a deed should be made.

In December, 1866, Faulds abandoned the work, and wholly failed to perform his part of the agreement, and soon after, Yates and Bunn commenced their suit in chancery, for a dissolution of the partnership, and an account and the conveyance to each of them of the undivided one-third of the "Sanger land."

The bill charges fraud and misrepresentation in regard to the sale of the shares of stock. The misrepresentation is fully proved, but was prior to the formation of the partnership. The representations, in regard to the value and cost of the stock, were proved to be untrue ; but they were made, as recited in the written contract between the parties, before its execution.

It may fairly be deduced from the evidence that the "Sanger tract" was purchased by Faulds with the design that it should constitute a part of the partnership property.

The court below decreed that the plaintiff in error convey to each of the defendants in error the one undivided third of the "Sanger tract," and pay to them $666.67, the excess paid by them for the Sanger land, and the one-third part of $19,259.16, the amount advanced by defendants in error in the mining operations.

A reversal of this decree is asked for, upon the following grounds : 1st. That the agreement between the parties is void, as against public policy. 2nd. That there can be no chancery jurisdiction arising out of the Sanger tract of land, and that there was full remedy at law. 3d. That the evidence does not sustain the allegations of fraud.

There were 1300 shares of stock of the Chicago Carbon and Coal Company, not owned by Faulds, Yates and Bunn. They did, however, own more than one-half of the shares ; and it was provided in the agreement between them, that they would elect the directors of the company ; that they would determine among themselves as to the officers and management of the

company, and that if they could not agree, they would ballot among themselves for the directors and officers, and that the majority should rule, and their vote be cast as a unit, so as to control the election.

It is contended that these parts of the agreement were intended for dishonest and fraudulent purposes, and were in conflict with the interests of the other stockholders, and absolutely void.

It should be remembered that the lease, by virtue of the assignment and renewal of which these parties obtained possession of the property, was made in 1863; and hence its terms and conditions were determined three years before Faulds, Yates and Bunn purchased any stock. The old board of directors approved the renewal of the lease, and then these parties, and two others, were elected directors.

The record wholly fails to disclose any injury to the other shareholders—any waste of the property; but, on the contrary, it appears that Bunn and Yates furnished for the improvement of the property over $19,000. There was no fraud in the agreement, which has been so bitterly assailed in the argument. There was nothing unlawful in it. There was nothing which necessarily affected the rights and interests of the minority. Three persons, owning a majority of the stock, had the unquestioned right to combine, and thus secure the board of directors and the management of the property. Corporations are governed by the republican principle, that the whole are bound by the acts of the majority, when the acts conform to the law of their creation.

The co-operation, then, of these parties, in the election of the officers of the company, and their agreement not to buy or sell stock, except for their joint benefit, can not properly be characterized as dishonest and violative of the rights of others, and in contravention of public policy. If one man owned a majority of the stock, he surely had the right to select the agents for its honest management. These three persons had formed a partnership for mining, under the lease of the

company. They knew they must make large expenditures of money. Incompetent and unfriendly directors and officers might involve them in much trouble, heavy expense and useless litigation. They had a double interest to protect,—their interests as shareholders, and their interests as lessees. It is strange that a man can not, for honest purposes, unite with others in the protection and security of his property and rights without liability to the charge of fraud and iniquity.

This agreement was made between persons who had invested a large amount of capital in an enterprise somewhat perilous. As shrewd, skillful and prudent men, they were desirous of increasing the investment, and making the stock more valuable. Their interests were identical with the interests of the minority shareholders. They could not destroy the property of the company, for the lands were of immense value if the mineral resources failed. If they increased the value of their own stock, they also increased the value of all other stock. If they destroyed the stock of others, they also, by the same act, destroyed their own. It is absurd to suppose that a sane man will ruin himself for the mere pleasure of ruining others.

The agreement complained of was entered into by Faulds and his partners. The shareholders, whom he is so solicitous to defend and protect, have not complained. He can not invoke their shield to fight imaginary wrongs. The transaction which he, through his counsel, denounces as fraudulent and nefarious, was conceived and consummated by him, as much as by his partners. Every motive which could influence a man for good, should have prompted him to silence.

If this combination was fraudulent and intended for bad purposes, the stockholders, who are in a minority, and who may have suffered, have ample redress. We prefer to listen to them, before any decision as to their wrongs.

The cases cited to sustain the position, that this agreement is void, are unlike the case at bar. In *Hawley* v. *Cramer*, 4 Cowen, 717, it was held that a purchase by an attorney for three of his clients, was fraudulent as against the other two,

who were absent; also, that an agreement between different persons, not to bid against each other, but to divide the profits, was against public policy.

. In *Randall* v. *Howard,* 2 Black, U. S. R. 585, it was decided that the law would not enable either party, in controversies between themselves, to enforce an agreement in fraud of the law, or which was made to injure another. In *Wheeler* v. *Sage,* 1 Wallace, 518, the same general principle is declared, as in the case of *Randall* v. *Howard, supra.*

The agreement in this case was not for the injury of the minority stockholders. It could not have been so intended, and we can not perceive that it could so operate. The selection of proper officers, the prudent management of the coal mines, the careful sale and purchase of stock, as provided for in the agreement, together with the expenditure of money in the improvement of the property, must have resulted in benefits to all the stockholders, and not alone to the parties to the particular agreement.

A careful reading of the contract shows no hidden advantage intended, no fraud, no dishonesty. For aught which we can discover in the record, if Faulds had performed faithfully on his part, this litigation might have been avoided, and the partnership have prospered.

It is next insisted that no relief can be granted as to the "Sanger land." The preponderance of the evidence is, that this land was purchased for the partnership.

Faulds denies that he sold it to Bunn and Yates, or that he purchased of Sanger, but admits that he told Bunn that he and Yates must join him in the purchase. Yates testified that Faulds informed Bunn and himself of the purchase; that this land was essential to the prosecution of their business, and that. he requested them to join him; that they did so, and each paid $3000. Bunn fully corroborates Yates. Faulds is contradicted by Sanger, who testified that he did sell the land to Faulds, and received from him the sum of $5800, in part payment, about the 1st of April, 1866. This was about the time defendants in error paid the $6000.

Notwithstanding the denial by Faulds, we are forced to the conclusion that he at least is mistaken, and that the "Sanger land" was purchased as partnership property.; and that Bunn and Yates each paid $3000 therefor. The balance of the purchase money was paid by Faulds.

This land, then, was bought for the use of the partnership. The funds of Bunn and Yates were paid as a part of the purchase money. Common honesty requires that each of them should have a conveyance of one-third of this land. Real estate, belonging to a partnership, will, in equity, be treated like its personal funds, and distributed accordingly. The party in whose name it stands should be held as a trustee of the partnership, and be made to account to the partners, according to their several rights and interests.

There was, however, error in the decree, in directing that Faulds should refund $666.66⅔, which, it is alleged, he received above the actual amount of purchase money for the Sanger land. The other partners agreed to pay $6000 for two-thirds of it. This was the contract. They have affirmed it by the allegations of the bill. They might have abandoned it, and sought other relief. But when a conveyance of the land is asked, it must be granted upon the specific terms of the agreement.

In this case, the means of information, as to the value of the land, were alike open to all parties. Bunn and Yates were upon the land, before payment, and made some examination of it. In such cases, equity will not relieve.

The objection is taken to the decree, that it orders a conveyance to Yates and Bunn by a joint warranty deed of an undivided one-third part of the Sanger lands. This is not true, in fact. The decree directs that the "defendant convey unto each of the complainants, by a general warranty deed, an undivided one-third part," etc.

It is unnecessary to advert to the objection, that the allegations of fraud are not sustained by the proof. The agreement between the parties was one of partnership for the management

of the leased property, and the plaintiff in error should be compelled to account, particularly as a decree of dissolution had been entered by agreement of the parties.

We do not think the Chicago Carbon and Coal Company was a necessary or even a proper party. Neither the stock nor the property of the company could be affected by any decree which could have been rendered. The corporation had no interest in the private affairs of these parties.

The decree of the court is reversed, so far as it directs the plaintiff in error to refund the sum of $666.66⅔, and is, in all other respects, affirmed; and the court below is directed to make this modification.

The decree is reversed and the cause remanded, with direction to make the modification suggested.

*Decree reversed.*