Teich et al. v. Kaufman, 174 Ill. App. 306.

question is preserved for review by assignments of error relating wholly to questions of evidence.

Error to the Municipal Court of Chicago; the HON. GEORGE J. COWING, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed October 8, 1912.

JOSIAH BURNHAM, for plaintiff in error.

MARK J. SULLIVAN, for defendant in error.

---

Max L. Teich and Carl C. Roessler, Complainants and Appellees, v. Nathan M. Kaufman et al., Defendants and Appellants.

## Gen. No. 18,686.

Max L. Teich and Carl C. Roessler, Appellees and Complainants, v. Nathan M. Kaufman et al., Appellants and Defendants.

## Gen. No. 18,762.

1. INJUNCTIONS—*what not considered on appeal from order granting.* Whether an interlocutory order granting an injunction is properly entered depends on the record as it stands at the time of

perfecting an appeal therefrom, and the record of subsequent proceedings to dissolve the same will not be considered on such appeal it appearing the injunction was still in force when the appeal was taken.

2. CORPORATIONS—*stockholders' contract looking to pecuniary benefit is against public policy.* A contract between some of the stockholders of a hotel corporation whereby they agreed that for five years all of the parties should be elected directors, that their stock should be voted as a unit on all propositions, that each should have an option on the others' stock and that as directors they would elect to or secure one another salaried official positions, is against public policy and cannot be enforced.

3. CORPORATIONS—*when collateral matters are immaterial in enforcing illegal contract.* Where a contract between stockholders of a corporation to elect one another as directors, acquire control and management of the company and obtain salaried official positions for one another, is illegal, in attempting to enforce the contract it is immaterial what was done before or after its execution, unless the agreement was known to and approved by all the stockholders.

4. CORPORATIONS—*when stockholders must have knowledge of illegality of contract.* Where stockholders of a corporation, by a contract between themselves, acquire control and management and obtain salaried official positions for some of them, it is immaterial that the contract between the salaried officials and the corporation was approved at a meeting of stockholders if it does not appear that the stockholders other than the parties to the illegal agreement had any knowledge of such agreement, and, if they did, it should affirmatively appear before equity will enforce such a contract.

5. CORPORATIONS—*when illegality of provision taints entire contract.* Where stockholders of a corporation contract between themselves that for five years they will elect all the parties directors, obtain control and management, give each an option on the others' stock and obtain salaried official positions for one another, the mutual promises relating to pecuniary benefits, being illegal and part of the consideration of the contract, neither the contract, nor any obligation growing out of it, can be enforced.

Appeal from the Superior Court of Cook county; the Hon. CHARLES A. MCDONALD, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Reversed. Opinion filed October 25, 1912.

HENRY S. ROBBINS, for appellants.

MAYER, MEYER, AUSTRIAN & PLATT and RUBENS, FISCHER & MOSSER, for appellees.

MR. JUSTICE BARNES delivered the opinion of the court.

Appellees, Teich and Roessler, filed a bill in equity against Nathan M. Kaufman, Samuel R. Kaufman, Congress Hotel Company, and Simeon Straus, praying for a preliminary and permanent injunction, the effect of which would be to enforce an agreement between said Kaufmans and appellees (therein and herein referred to as agreement B) and likewise one entered into between appellees and said Congress Hotel Company (therein and herein referred to as contract C). From the order granting a preliminary injunction on the filing and reading of the bill, the Kaufmans have appealed. After perfecting said appeal, motions to dissolve said injunction were made by said Company based on its demurrer to the bill, and on behalf of the other defendants, based upon their respective answers, affidavits and oral evidence. The motions were denied and from the denial thereof said company and said Kaufmans have appealed. As such appeals are all in the same suit, they may properly be considered in one decision.

Appellees urge that the appeal from the order granting the injunction should be considered with reference to what appears in the record showing the proceedings on the motion to dissolve it, and cite the case of Sharples v. Baker, 100 Ill. App. 108. The statute gives the right to appeal from either the granting or refusal to dissolve such an order. The bond on the appeal from granting the injunction was approved and filed June 14, 1912. The proceedings to dissolve such injunction were at a later date and could not affect the question whether or not the injunction was properly granted. That question is before this court on the record as it stood when the appeal was taken. In the Sharples case, *supra*, it appeared from the record that the injunction appealed from was not in force at the date of the appeal, having been previously modified at appellant's own request. The injunction in

the case at bar, being still in force at the time of perfecting the appeal, this court will consider the questions thereby raised.

The record discloses that the Kaufmans owned 4934 shares of the common stock of said company and appellees an equal number, which together made a majority of the outstanding voting stock. The Kaufmans as parties of the first part, and appellees as parties of the second part, entered into a written agreement B, January 10, 1911. It provided that for a period of five years therefrom all the shares of stock owned by them should be voted in the same way on any propositions that might come before any stockholders' meeting and for the same director or directors at any election to be held, as the parties thereto might decide; that until otherwise decided all of said parties should be elected directors of said company; that as members of said board of directors they should vote for and secure the election of N. M. Kaufman as president and provide for an annual salary of $7,500, to be paid him, and the election without salary of Roessler as vice president, and Teich as secretary and treasurer, and that they should secure the making of a contract for the services of said Teich and Roessler as managing directors of said company for the period of three years, as the same had then been prepared and reduced to writing for submission at the next meeting of the board of directors, and secure an extension thereof during the life of the agreement.

The contract to employ appellees as managers, referred to as contract C, was read and approved at a special meeting of the board of directors, held the next day, and provided that the company should pay said Teich and Roessler as such managers jointly and to the survivor of them $15,000 a year.

Agreement B further provided that each party to it, in case of default in the payment of certain notes, given by the other, might respectively pay the same and then become entitled, on terms and prices therein

fixed, to stock of said company pledged as collateral to said notes. It further provided that during the life of the agreement neither party should sell or dispose of his shares of stock covered thereby to any other person than the parties thereto, without first giving the other parties the right to purchase the same at the market price within thirty days; and that the sale of such stock, in any event, so long as the agreement was in force, should be made subject to the terms thereof, and with full notice thereof to the purchaser. It further provided that in case of a disagreement as to the interpretation thereof, or policy to be pursued by the parties thereto, the matters in dispute should be submitted to said Straus for decision, which should be binding on all parties.

The bill sets forth certain transactions between the parties leading up to the execution of agreement "B" which, as we view the case, need not be referred to or considered, and certain other matters subsequent thereto, the purport of which is that the Kaufmans violated the terms of agreement B, and sought to bring about the annulment of contract C, and to that end conspired to get, and have secured, enough additional stock to give them a majority of the common stock, and thus the means of controlling said company and annulling contract C.

The bill further alleges that said Straus has prejudged the questions that may be submitted to him.

Among other things the bill prays that the Kaufmans may be declared trustees for appellees as to one-half of all the stock acquired by them subsequent to the date of agreement B, and account for the profits, and be required to transfer the same to appellees on certain conditions of their paying therefor; that the interests of said Kaufmans and appellees in their stockholding shall be declared joint and a partnership in effect; that a receiver be appointed to vote said stock as joint stock, and asks for a temporary and a permanent injunction, which seek in effect a specific

performance of not only agreement B but contract C.

The order for injunction was entered May 18, 1912, and enjoins the Kaufmans from selling, transferring or assigning any shares of stock owned or controlled by them "except in conformity with the terms of said agreement, Exhibit 'B;'" and also enjoins them, or their agents, until further notice, from voting any shares of stock owned or controlled by said Kaufmans at any future stockholders' meetings for directors other than such directors as may be mutually agreed upon by the Kaufmans and appellees, and enjoins the defendant Straus from acting as an umpire or arbitrator under said agreement.

The principal contention relied upon in both appeals and the only one we deem necessary to consider is that said agreement B is void as being against public policy, and, therefore, one that cannot be enforced. Holding, as we are compelled to do, that it is an agreement of such a character, it is unnecessary to consider the matters of fact involved in the negotiations preliminary to its execution, or subsequent facts bearing on the efforts of the Kaufmans to repudiate it. If it is illegal, it matters little what was done before or subsequent to its execution (unless such agreement was known to and approved by all the stockholders) for, if against public policy, neither party is in position to assert any rights under it, or to ask for its enforcement directly or indirectly.

The contract was something more than an agreement to elect one another as directors, acquire control and management of the company, and secure options on one another's stock. The courts have frequently upheld contracts of such a character. But it was an agreement to bind and control their judgment as such directors without regard to the interests of the stockholders they represented. Under it, they were obligated as directors to pursue a definite course of action for a series of years, looking specifically to their profit as officials or employees of the company, regardless

of the effect upon it or its stockholders. Stockholders are entitled to the exercise of the free and honest judgment of their directors upon conditions as they arise and bear upon the interests of the company. To bargain away in advance for their own profit the judgment the law contemplates they shall exercise at subsequent official meetings for the company's interests on conditions as they arise for consideration, is incompatible with a faithful and just performance of their official duties, and with the fiduciary relationship of their position. Certainly they could give no proper consideration to such matters affecting the interests of the company, or its stockholders, as might conflict with their obligations and liabilities under a private agreement looking to their individual interests alone. It is not difficult to conceive that such a course of action might result in the exploitation of a company's assets merely to furnish profitable employment for its directors and their friends; and that it might result in failure or bankruptcy. Equity will not stop to inquire into the actual results of such a contract. It is enough that its tendency is to prevent them as directors, by whom, under the statute, "the corporate powers shall be exercised," from a faithful performance of the duties which devolve upon them in their representative capacity.

In the case of West v. Camden, 135 U. S. 508, the court said, with regard to an agreement which bound the future actions of a director to keep a person permanently in the position of vice president of the company, irrespective of its interests, that the stockholders had a right to have the defendant's judgment as an officer of the company exercised with sole regard to the interests of the company, and that such a contract was void as against public policy even though there was no direct private gain to said director. It was there said that his liability under such an agreement was calculated to be a strong incentive for him

to act directly contrary to the true interests of the company and its stockholders.

In Guernsey v. Gook, 120 Mass. 501, where two of the stockholders agreed to secure to the purchaser of a part of their stock at a price named, the treasurership of the corporation at a certain annual salary, the contract was also held void as being against public policy. The court said:

"The promisee was placed under direct inducement to disregard his duties to other members of the corporation, who have a right to demand his disinterested action in the selection of suitable officers. He was in a relation of trust and confidence, which required him to look only to the best interest of the whole, uninfluenced by private gain."

The court further said, as might be said here, that,

"The objection that the contract is illegal, although it comes with no good grace from the defendant, is allowed to prevail, not as a protection to him, but for the sake of the public good, and because the public will not lend its aid to enforce an illegal contract."

In Cone v. Russell, 48 N. J. Eq. 208, an agreement by a stockholder to give other stockholders his proxy irrevocable for five years to vote his shares at all stockholders' meetings so as to secure him continuous employment as manager of the company at a salary of $2500 a year, was held against public policy. The court said:

"Servants of a corporation should be employed and paid upon their merits, and buying votes for an office in a corporation is of the same objectionable character as buying them for a public office. The same may be said of buying the right to control the business policy and management of the affairs of a corporation."

In the case of Woodruff v. Wentworth, 133 Mass. 309, the agreement of a stockholder to vote for a certain party as manager and to increase the salary of officers, including that of the manager, was held to be

void as against public policy, "unless it was consented to by all the stockholders of the corporation."

It is urged in the case at bar that the contract between appellees and the company for their services and management was approved at a meeting of the stockholders; but it does not appear that the stockholders of the company, other than the parties to agreement B, had any knowledge of such illegal agreement, and if they did, it should affirmatively appear before a court of equity will enforce a contract of such character. With respect to this question, the facts in the case at bar are quite different from those in the cases of Faulds v. Yates, 57 Ill. 416, and Kantzler v. Bensinger, 214 Ill. 589, which appellees bring to our attention. In the Faulds case, *supra,* the agreement did not bind the parties to any specific course of action as directors, or that they should, as such, vote one another salaries; and, in the Kantzler case, *supra,* the agreement, as expressly stated in the decision, was entered into by all the stockholders. Other cases cited by appellees, upholding contracts between stockholders to elect one another directors or to secure the management and control of the corporation, and similar contracts, are clearly distinguishable from and not inconsistent with the West, Guernsey and other cases above cited, the decisions of which rest upon a state of facts where one in a fiduciary relation entered into a contract incompatible with his performance of the duties devolving upon him in such relation.

It has been held by our Supreme Court that a resolution by which a salary or compensation is voted to an officer of a corporation is illegal if carried by his vote and equally illegal if procured by his influence, although enough directors voted for it to carry it without counting him. Adams v. Burke, 201 Ill. 395; McNulta v. Corn Belt Bank, 164 Ill. 427. It would seem to follow that any previous agreement between directors for such action would also be illegal.

But it is urged by appellees that the provisions in

agreement B are separable. It may be assumed that the provisions to elect one another directors and to give each an option on the other's stock were intended to insure the fulfilment of its main provisions to give N. M. Kaufman and appellees salaried positions for a period of five years. Whether so or not, it is manifest that the mutual promise binding the parties, as directors, to vote for and to secure the salaried positions as aforesaid, entered into the entire agreement as a consideration therefor. "Nothing is better settled in the law of contracts than that if any part of the consideration upon which a promise rests is illegal the entire promise fails." Estate of Ramsay v. Whitbeck, 183 Ill. 550; Henderson v. Palmer, 71 Ill. 579.

While the injunction relates to parts of the contract which otherwise might be upheld, tainted as they are by the illegal consideration upon which they, at least in part, rest, the injunction cannot stand. We, therefore, deem it unnecessary to consider any other questions presented in these appeals, except the interest of appellant Congress Hotel Company, which is affected by said injunction so far as by enforcing agreement B it seeks to enforce contract C. We need not pass upon the validity of the latter contract further than to hold that so far as the bill seeks its enforcement as an obligation growing out of agreement B, it cannot be enforced. The company cannot be bound by the private agreement B, and should not be by any injunction which seeks to enforce it.

Both the order granting the injunction and the order refusing the motion to dissolve it will be reversed.

*Reversed.*