Howard B. Haines et al., Appellees, v. Mid-West Wholesale Grocery Company., Inc., et al., Appellants.

Opinion filed December 26, 1933.   Rehearing denied February 26, 1934.

LEAHY, SAUNDERS & WALTHER, CHESTER FARTHING and JUDSON HARRISS, for appellants.

L. P. HARRISS and ISAAC K. LEVY, for appellees.

MR. JUSTICE STONE delivered the opinion of the court.

Complainants, appellees here, minority stockholders of Mid-West Wholesale Grocery Company, Inc., filed their bill in chancery in the circuit court of Perry county against the defendants, Mid-West Wholesale Grocery Company, Inc., C. W. Sheehan, Lottie Sheehan, George Rountree, Louis Kern McCollum and Walter J. Forester, officers and directors of said Mid-West Wholesale Grocery Company, Inc., alleging that on or about August 27, 1927, and prior to the incorporation of said appellant, Mid-West Wholesale Grocery Company, Inc., a certain agreement was entered into by and between T. S. Cousins, J. T. Stephens, George Thomas, C. W. Sheehan and J. D. Byrne on the one part and the said C. W. Sheehan on the other part wherein it was agreed by and between said parties that said T. S. Cousins, J. T. Stephens, George Thomas, C. W. Sheehan and J. D. Byrne were to be the directors and C. W. Sheehan was to be the president and general manager of the Mid-West Wholesale

Grocery Company, Inc.. which was then in process of organization as a corporation; that C. W. Sheehan was to be retained as such president and general manager for a period of 10 years from the date of the incorporation of said company at a salary of $250 per month; said agreement further providing that should said Sheehan die or become incompetent to manage the affairs of said company, then said compensation provided to be paid to him was to be paid to his wife, and that she was to assume the presidency and management of said company during the term of said agreement; that said agreement further provided that it would not be necessary for Sheehan to remain in the City of DuQuoin where the company had its offices and to have active supervision of the affairs of said company, but that he might direct the management thereof in such a manner as he should deem proper; that the Sheehan Cash Grocery Stores mentioned in said agreement was not incorporated, but that the defendant Mid-West Wholesale Grocery Company, Inc., was organized as a corporation as aforesaid; that said written agreement was never ratified at any meeting of the stockholders or any meeting of the board of directors of the company prior to the filing of this bill; that ever since the incorporation of said company, it had paid to C. W. Sheehan the sum of $250 each month as provided in said written agreement, the first payment being for the last half of November, 1927. The payment as aforesaid was admitted by appellants on the trial; that the aggregate amount paid to the said Sheehan by reason of said contract, was $13,125 up to March 28, 1932, the date of the filing of the bill of complaint.

Said bill further alleges that said C. W. Sheehan and Lottie Sheehan, his wife, resided at El Paso, Texas; that said C. W. Sheehan admitted residing outside of the State of Illinois since said company was incorporated; that said C. W. Sheehan had rendered

and performed practically no services whatever in be-
half of said company since its incorporation; that no
compensation was authorized to be paid said C. W.
Sheehan by any by-laws or by any resolution of the
company prior to the filing of the bill; that ever since
the incorporation of said company its business and
affairs had been actually managed by certain other
parties and that the company had been compelled to
pay and had paid large sums of money to other per-
sons for services rendered and performed in the actual
management of the stores and business of the com-
pany and that during all that time, the said C. W.
Sheehan had been far removed from the stores and
business of the company, and had rendered practically
no services whatever for the company; that said writ-
ten agreement was not signed by all the stockholders
of the company; that appellees did not obtain their
respective share of stock in the company from the
said T. S. Cousins, J. T. Stephens, C. W. Sheehan or
J. D. Byrne or from either of them, but that they
obtained their said stock direct from said company
and paid said company for the same.; that said T. S.
Cousins, J. T. Stephens, George Thomas and J. D.
Byrne did not have issued to them and did not obtain
from said company all the shares of stock for which
they originally subscribed; that appellees at the time
they became stockholders in said company did not
know of the existence of said agreement and did not
learn of the same until a few months prior to the time
they filed their bill of complaint; that said written
agreement was contrary to public policy and is other-
wise void as to appellees; that said payments of $250
to said C. W. Sheehan were improper and were not
authorized and were wrongfully made to him and said
C. W. Sheehan wrongfully and improperly received
from said company, prior to the filing of said bill of
complaint, the aggregate sum of $13,125 on account

of said monthly payments; that C. W. Sheehan should account to said company for the same; that said C. W. Sheehan had also wrongfully and improperly received from said company the sum of $1,722.31 in payment of hospital bills, railroad fare, hotel bills and divers other personal and private bills and expenses of the said C. W. Sheehan; that the said C. W. Sheehan did not pay cash for his shares of stock in said company, but paid for the same in property; that the property turned over to the company by C. W. Sheehan was estimated to be worth $43,000 and that said Sheehan was given in payment of same 430 shares of common stock in the company of the par value of $100; that appellees, at the time they became such stockholders, did not have any knowledge or any information as to what said Sheehan paid for his stock in the company; that said written agreement is injurious and oppressive to said company and is void and should be canceled; that C. W. Sheehan has wrongfully and improperly received from the company, on account of the improper, wrongful and unauthorized payments aforesaid, the aggregate sum of $14,847.31, and that he should pay that amount back to the company; that said Sheehan owns the majority of the stock in said company, and that a majority of the directors and officers of said company are controlled by the said Sheehan; that the said Sheehan, Lottie Sheehan, George Rountree and Louis Kern McCollum who constitute more than a majority of the board of directors of said company and who are the officers of said company are controlled by the said Sheehan.

The bill then prays for a cancellation of the said contract and a decree requiring appellee Sheehan to pay back the said sum of $14,847.31. It further prays that an injunction be issued restraining said company and its officers from paying any further sums to the said Sheehan on account of the aforesaid contract.

Appellants answered the bill denying all of the material allegations *in toto* except as aforesaid; they admitted the making of the contract and the payments of the money as alleged in the bill. The court entered its decree finding substantially all the facts as set out in the bill to be true and ordered and decreed that said contract be canceled; that appellees be enjoined from paying any further sums of money to the said Sheehan as prayed and that appellee Sheehan pay back to said company the said sum of money so found to be due and owing by him. Appellant Sheehan has appealed to this court assigning as errors that the decree is contrary to the law; is against the manifest weight of the evidence; that the court erred in not dismissing the bill for want of equity, and in finding the equities with appellees; that the court erred in finding that it was useless to request the directors to take action against said C. W. Sheehan because the said Sheehan dominated the board of directors; that the court erred in finding that the complainants and each of them did not have knowledge of Sheehan's salary contract prior to the purchase of their stock; that the court erred in canceling Sheehan's salary contract and in requiring Sheehan to pay back the money he had received; that the court erred in finding Sheehan's salary contract void; also in not finding that Sheehan's salary contract had been adopted by the corporation; that the court erred in finding that complainants purchased treasury stock and in finding that Sheehan did not earn his salary; that the court erred in not finding that the Sheehan contract was a part of the purchase price of Sheehan's stores; that the court erred in not requiring the complainants to offer to put Sheehan in *status quo*.

The evidence shows that commencing in 1921 with a small stand C. W. Sheehan and his wife built up a chain of five grocery stores, located in DuQuoin, Tam-

aroa, Pinckneyville, Dowell and Cutler, Illinois; that by 1927, C. W. Sheehan was sole owner of the business, and had an income of $18,000 per year; that in 1927, Sheehan was stricken with tuberculosis; that it became necessary for him to form a corporation and get out from under the load he was carrying. Accordingly, defendants went into conference on the question of organizing a corporation, the result of which was that appellant Mid-West Wholesale Grocery Company, Inc., was organized; that its assets consisted of the property formerly held by Sheehan which he turned in to the company and cash was to be paid in by the other subscribers. For the property turned in by Sheehan he was to receive $43,000 in stock and a 10-year salary agreement. This salary agreement was signed by the same men who became the first board of directors and who subscribed for the stock. It was prepared by a lawyer five days before the company was incorporated; a copy of said agreement was at all times left in the company's safe. Complainants acquired their stock in 1928. They were induced to buy it by stockholders other than Sheehan.

Complainants, to show they purchased their stock direct from the company, offered their respective checks payable to the Mid-West Wholesale Grocery Company, Inc., together with the indorsements on the back; they also offered their respective shares of stock which do not show that they were assigned by a prior shareholder. To offset this, defendants offered the articles of incorporation which showed all the stock paid for and subscribed; they also offered the testimony of Hiley Ward, the corporation's secretary, the testimony of the lawyer who drew the contract and incorporated the company, the testimony of Stephens, one of the original incorporators, and the method of the original stockholders, in transferring the shares through the secretary.

The evidence shows that the Sheehan salary contract was at all times filed with the company's papers in the main office in DuQuoin; that it was a part of the purchase price paid to Sheehan for his business; that at all times Sheehan's salary of $250 per month was paid, pursuant to the agreement; that the company's minutes of December 6, 1929, and Sheehan's letter in the minutes of December 20, 1929, discussed the Sheehan contract. Defendants offered other evidence to show that each individual appellee long had actual knowledge of Sheehan's contract without protest.

The evidence also shows that the expense account with which Sheehan is charged was incurred by Sheehan by trips to and from DuQuoin, Illinois, and were made when the business required it. The evidence is conflicting as to just how much time and attention Sheehan gave to the business. The company was paying dividends of about eight per cent and had paid a four per cent dividend by the fall of 1932. The original articles of incorporation showed the names and addresses of the subscribers to the capital stock and the amount subscribed and paid in by each, as follows:

| Name | No. of shares | Amount subscribed | Am't paid in |
|---|---|---|---|
| T. S. Cousins | 425 | $ 4,250.00 | $ 4,250.00 |
| J. D. Byrne | 425 | 4,250.00 | 4,250.00 |
| Geo. W. Thomas | 425 | 4,250.00 | 4,250.00 |
| C. W. Sheehan | 4300 | 43,000.00 | 43,000.00 |
| J. T. Stephens | 425 | 4,250.00 | 4,250.00 |

The $43,000 stock which went to Sheehan was not paid for in cash but by the transfer to the company of the five retail grocery stores which Sheehan owned. All of the stock subscribed by the other incorporators was not paid for entirely when the company was incorporated.

This record discloses beyond dispute that before and on August 27, 1927, an understanding was arrived

at by and among all the subscribers to stock of the Mid-West Wholesale Grocery Company, Inc., in and by which defendant Sheehan was to have a 10-year contract at the rate of $250 per month as manager of the concern to be incorporated; that in the event of his death the concern should pay Mrs. Sheehan the same salary, as manager, during the remaining period of the 10 years. Much discussion was had concerning the justice of this contract, it being finally definitely agreed that said contract should be entered into as a part of the consideration for Sheehan's transferring his stores to the corporation to be organized. In accordance therewith, the contract was entered into by all the incorporators, who afterward became the first directors of the corporation. These parties were in the act of forming a corporation. They were agreeing upon the value of the Sheehan stores, and upon the general plan upon which the corporation was to be organized and conducted. So long as nothing was agreed upon which was inconsistent with the statute or immoral in itself there can be no objection to the contract on the score of public policy. *Kantzler v. Bensinger,* 214 Ill. 589; *Higgins v. Lansingh,* 154 Ill. 301; *Faulds v. Yates,* 57 Ill. 416; *Lorillard v. Clyde,* 86 N. Y. 384; *Brictson Mfg. Co. v. Close,* 280 Fed. 297. The case of *Teich v. Kaufman,* 174 Ill. App. 306, is distinguishable from the *Kantzler* case, *supra,* in that that agreement was one made between directors to the detriment of stockholders whose interests it was their duty to guard; whereas in the case at bar, the contract was a part of the consideration which moved appellant to put his stores into the business. At the time of signing the contract, there were no stockholders and all persons interested were represented; consequently there was no one to whom the organizers owed any duty as *cestui que trust* or otherwise. The same dis-

tinction exists as to the case of *Hall v. Woods,* 325 Ill. 114.

The contract was not void as urged by complainants. Whether it was so inequitable as to entitle complainants to have it rescinded must be determined upon other grounds.

It is urged by complainants that they bought the stock they hold direct from the company and not as assignees of any other stockholder. The record shows that the entire stock of $60,000 was subscribed when the company was chartered. Sheehan took $43,000; the other four incorporators each took $4,250, so that there was no stock left in the treasury. However complainants got their stock they had to get it from stock that had already been subscribed. It is true their certificates came direct from the company but this necessarily had to be so. They could not take the stock as a direct assignment from someone who held it. The transfer could only be made by the seller turning in his certificates having them canceled and having new certificates issued by the company. The shares were only transferable on the books of the company. The issuing of their stock by the secretary of the company does not prove that in purchasing their stock complainants dealt directly with the company. The stock which they hold had been subscribed by somebody under conditions which took into consideration the Sheehan contract. They would have to deal with someone who had subscribed for the stock, else under no condition could the secretary sell them their stock. There was none for sale. Whatever system or understanding there was between those who had subscribed for the stock and the secretary of the company by which the certificates would be issued to subsequent purchasers the record does not satisfactorily disclose, but the stock must ultimately come from the company. It is true that all the subscribed stock had not been

paid for when complainants bought theirs but it had been contracted for. This placed it beyond the power of the company to resell it without the consent of the person who had purchased it. The sale by one who has subscribed for stock which has not been issued to him and having it issued to his buyer direct from the company is not an unusual transaction. Complainant, Kunz, was a resident of DuQuoin; he was induced to buy stock by Cousins. Is it not a reasonable conclusion that Kunz bought some of the stock subscribed by Cousins? William Thomas became interested through Cousins and bought his stock the next day after his brother George had subscribed. He was an intimate friend and employee of Cousins.

Kohler had been in Sheehan's employ and also in the employ of the Mid-West Wholesale Grocery Company, Inc., after its incorporation, Haines was an intimate friend of Cousins and Cousins induced him to buy his stock. Whom did he buy it from if not from Cousins, the man who induced him to buy? The original subscribers took their stock, subject to the obligations of the corporation placed upon it at the time of organization. They could not lessen these obligations by a resale. If they perpetrated a fraud upon their respective purchasers, that is a question not to be dealt with here. The purchaser of shares of stock acquires no greater rights than his vendor. He holds by the same title and subject to the same liability. Shares of stock are merely choses in action and the successive owners acquire only the right held by their predecessors in title. *Babcock v. Farwell*, 245 Ill. 14; *Bilhuber v. Bilhuber-Wawak Co.*, 245 Ill. App. 552.

Complainants claim that they had no knowledge of the Sheehan contract. The corporation was organized on September, 1927; the contract was entered into in August, 1927. Complainants Thomas and Kunz became stockholders about the 15th of February, 1928;

Kohler became a stockholder about June 20, 1928; complainant Thomas purchased his stock the next day after his brother bought his. The bill in this case was not filed until 1932. This seems a long time for stockholders to remain in ignorance of the conditions of a concern in which they have been stockholders, from which they have received dividends and in whose management they have participated. In weighing the statements of complainants that they had no knowledge of the Sheehan contract until shortly before the bringing of the suit, we have to consider other circumstances in evidence.

Haines was a banker at Tamaroa. One of the stores of this company kept its account there. Defendant Stephens testified that he discussed the Sheehan contract with Haines. Complainant Kohler drove with Sheehan and Stephens from DuQuoin to St. Louis on the occasion of Sheehan's leaving for the south. Stephens and Sheehan both testify that on the way they discussed the contract; that during the discussion Kohler said he wanted some of the stock. Kunz says that he knew that Sheehan was being paid for what he did. Thomas is a brother to one of the original stockholders. The minutes of the company of December, 1929, show a copy of a letter sent to Thomas by Sheehan, discussing the contract and the expenses incurred by Sheehan. This letter obviously was prompted by a request from the board of directors made at its meeting December 6, 1929. At that time and place the contract was referred to and it was claimed that the expenses were not warranted by the contract. The secretary was then instructed to write to Mr. Sheehan calling upon him for an explanation. She evidently did so. Sheehan replied on December 18, 1929, sending a copy of his reply to Thomas and a copy to Mayor.

It is possible that this letter remained in the files of the company and did not come to the knowledge of the stockholders, but not probable. It seems improbable that Thomas and Mayor did not disclose this letter to the others who were interested. It must also be borne in mind that this contract was at all times among the files of the company and copies were made for each of the directors.

A fair consideration of all the evidence on this subject of knowledge leads us to believe that the great weight of evidence is to the effect that complainants had knowledge of the Sheehan contract long before the starting of this suit; that with that knowledge they acquiesced in the management of the corporation, drew their dividends on their stock, but, at no time made any effort to have their grievances adjusted by powers within the corporation. In our judgment the chancellor in finding that appellees had no knowledge of the Sheehan contract found such fact against the weight of the evidence. Complainants ought not therefore be heard to bring this suit. They could not in any event participate in any recovery, could there be a recovery. Complainants say that they bring this suit on behalf of all other stockholders similarly situated, yet they do not disclose the names of such persons nor can the court determine whether there are such persons and if so, whether they are similarly situated. We must therefore determine the issues here upon the standing of complainants themselves. We are constrained to the belief that if there are other stockholders who have been deceived by the organization of this corporation and its management, these complainants have participated in such deception by their long acquiescence in the conduct of the company. Complainants are not now in a position to speak for such innocent parties if there are such. There are no such stockholders as far as this record indicates, and to

allow complainants to benefit because of a wrong-doing of this corporation is to allow them to benefit by a wrong in which they participated if a wrong was done. Furthermore, complainants have made no move toward placing Sheehan in the position in which he was when the contract was made.

In our judgment the trial court erred in its findings on the three major points which control this lawsuit: (1) in finding that the Sheehan contract was void as against public policy; (2) in finding that complainants bought their stock from the corporation direct and not from other stockholders; (3) in finding that complainants had no knowledge of the Sheehan contract until 1932. A decree based upon erroneous findings cannot be sustained when such findings are on matters which are controlling in the case.

The decree of the circuit court is reversed, and the cause is remanded to that court with instructions to dissolve the injunction and dismiss the bill for want of equity.

*Reversed and remanded with directions.*