FREDERICK M. KANTZLER

*v.*

MOSES BENSINGER *et al.*

*Opinion filed February 21, 1905—Rehearing denied April 14, 1905.*

1. CONTRACTS—*when a contract giving option is not illegal.* A contract whereby the party of the second part agrees, at any time within a certain period, to purchase from the parties of the first part a specified number of shares of stock at guaranteed book value, is not such an option contract as is illegal under section 130 of the Criminal Code, even though the first party is not obligated to sell.

2. SAME—*what contracts are within meaning of Criminal Code.* Only those contracts for options which are in the nature of gambling transactions fall within the meaning of section 130 of the Criminal Code.

3. SAME—*when contract to elect certain persons to offices is not against public policy.* A contract, to which all the shareholders of a corporation are parties, providing for the sale of part of the stock to the other parties to the contract, and providing that certain of the parties of the first part shall be elected to the offices in the corporation for a fixed period, is binding and enforceable as between the parties.

4. APPEALS AND ERRORS—*presumption where Appellate Court reverses without remanding or finding facts.* On the reversal of a judgment at law by the Appellate Court without remanding or reciting the facts, it will be presumed by the Supreme Court that the reversal was not for errors of law, but that the Appellate Court, although agreeing with the trial court as to the facts, found the evidence insufficient to support the judgment.

5. SAME—*when cross-error must be assigned.* Reversal by the Appellate Court of a judgment at law without remanding or reciting the facts is, in effect, a holding that the trial court did not err in its rulings on the admissibility of evidence, and if the appellee, upon further appeal, desires to question the decision of the Appellate Court approving the action of the trial court he should assign cross-error in the Supreme Court.

RICKS, C. J., dissenting.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

This was an action of assumpsit commenced by the plaintiffs, for the use of Frederick M. Kantzler, against the defendants, in the circuit court of Cook county. A jury was waived and the case was tried before the court and resulted in a finding and judgment in favor of the plaintiffs for the sum of $14,599.43. An appeal was perfected to the Appellate Court for the First District by the defendants, where the judgment was reversed without remanding and without a finding of facts, and a further appeal has been prosecuted to this court by the plaintiff Frederick M. Kantzler.

The declaration contained one count, as follows:

"For that whereas, on April 18, 1893, plaintiffs were possessed of a storeroom known as the Garden City Billiard Hall, located on East Madison street, Chicago, together with all the property therein, with the good will thereof and the leases of the premises wherein the same was situated, and were also the owners of a thousand shares of the capital stock of the Garden City Billiard Table Company, a corporation, the same being the entire capital stock of said corporation, and the said defendants being desirous of acquiring said stock and certain assets and property of said corporation, thereupon said Frederick M. Kantzler, Nicolaus Stoll and Arnold B. Stoll, as party of the first part, and said defendants as party of the second part, entered into the following contract:

" 'This agreement, made and entered into at Chicago, Illinois, this 18th day of April, A. D. 1893, by and between Frederick M. Kantzler, Nicolaus Stoll and Arnold Stoll, all of Chicago, Illinois, party of the first part, and Anton F. Troescher, of the city of New York, Moses Bensinger, of the city of Chicago, and Julius Balke, Jr., of the city of Cincinnati, Ohio, party of the second part:

" 'Witnesseth: It is mutually agreed by and between the parties hereto, that the Garden City Billiard Hall, located on East Madison street, Chicago, together with all the property therein, with the good will thereof and the leases of the prem-

ises whereon the same is situated, shall be sold and transferred to Frederick M. Kantzler, for and in consideration of the sum of one dollar; that thereafter an inventory shall forthwith be taken of all the stock, tools, merchandise, machinery, fixtures and office furniture now on hand at the factory of the Garden City Billiard Table Company in Chicago, or elsewhere, at cost prices of the same, respectively. Said second party jointly and severally agree that they will forthwith pay to said first party sixty per cent of the amount of said inventory, and in addition thereto the sum of $25,000.

" 'Said second party further agree and guarantee that the individuals comprising said party of the first part shall be re-elected for the period of five years to the offices of president, treasurer and secretary, respectively, of said Garden City Billiard Table Company, and that their salaries shall be $2000 per annum each, payable monthly. They further agree and guarantee that at the expiration of five years from the date hereof they will pay to said party of the first part, their legal representatives or assigns, for four hundred shares of the capital stock of said company the book value thereof, which said book value said second party jointly and severally agree and guarantee shall not be less than $50 per share: (*Provided,* that any one or more of said individuals comprising said party of the first part may have the option to retain his proportion of said four hundred shares, and provided he has faithfully and satisfactorily performed his duties under this agreement, renew his contract of service with said Garden City Billiard Table Company for an additional period of five years, at $2000 per annum, payable monthly.)

" 'Said party of the second part do further jointly and severally agree and guarantee that dividends shall annually be declared and paid on the capital stock of said company not to exceed the amount of ten per cent of the par value thereof from the earnings of said company, provided the net earnings for such year shall equal such ten per cent; but said dividends shall not be payable until the company has funds.

If the amount of the net earnings of said company do not amount to ten per cent of the capital stock thereof for any given year, no dividend shall be declared for such year.

" 'In consideration of the foregoing payments, agreements, guaranties and options, said party of the first part agree as follows:

" '(1) They are to have absolutely all moneys, debts, claims, accounts and bills receivable now belonging to said Garden City Billiard Table Company, and they are to discharge and pay all the debts, claims and bills payable now outstanding against said Garden City Billiard Table Company and save said company harmless therefrom, and during said liquidation the old books are to remain at the office of said company. A bond in the sum of $50,000, with J. M. Oliver and J. G. Earle as sureties, shall be given, conditioned to pay all said debts and liabilities.

" '(2) Each individual comprising said party of the first part agrees for himself as follows: Frederick M. Kantzler shall serve as president of said company for a period of five years from and after the date hereof, and devote to the duties of said office the same amount of time and attention, approximately, that he has devoted thereto for the period of five years last past. Nicolaus Stoll shall serve as treasurer of said company for a period of five years from and after the date hereof, and is to devote all his time and attention to advance the interests and welfare of said company. Arnold Stoll shall serve as secretary of said company for a period of five years from and after the date hereof, and shall devote his entire time and attention to advance the interests and welfare of said company.

" '(3) Said party of the first part shall forthwith, on the payment of the money first aforesaid, deliver to said party of the second part six hundred full-paid shares of the capital stock of said company.

" 'It is further mutually agreed that the number of directors in said company shall be forthwith increased to seven,

and that each individual comprising said party of the first part, or the survivor or survivors of them, shall be annually elected a director of said company for said period of five years from and after the date hereof. If the assets, upon the taking of the inventory, should be less than $30,000, then a proportionate abatement shall be made from said $25,000, and also from said guaranty of $50 per share on said four hundred shares.

" 'In witness whereof said parties have hereunto set their hands and seals at Chicago, Illinois, the day and year first aforesaid.

| | |
|---|---|
| FREDERICK M. KANTZLER, | (Seal.) |
| NICOLAUS STOLL, | (Seal.) |
| ARNOLD B. STOLL, | (Seal.) |
| ANTON F. TROESCHER, | (Seal.) |
| MOSES BENSINGER, | (Seal.) |
| JULIUS BALKE, Jr. | (Seal.)' |

"Said plaintiffs further aver that afterwards said Garden City Billiard Hall, with the property therein and the good will thereof, and the leases of the premises wherein the same was situated, was transferred to said Kantzler as in said contract provided for, and that thereafter an inventory was taken of all the stock, merchandise, etc., of said Garden City Billiard Table Company as provided in said contract, and that said inventory amounted to over $30,000, and said second party paid to said first party sixty per cent of said inventory, and $25,000 in addition thereto. And thereupon said party of the first part delivered to said party of the second part six hundred full paid shares of the capital stock of said Garden City Billiard Table Company. Plaintiffs further aver that afterwards the said party of the first part took all moneys, accounts receivable, etc., belonging to said corporation, under said contract, and discharged and paid all debts and bills payable outstanding against the said corporation at said time, after giving the bond provided for in said contract. Plaintiffs further aver that said Kantzler served as president of said corporation until, to-wit, February 12, 1897, when,

214—38

'without just cause' and against the will of said Kantzler, said corporation deposed him from said position and refused longer to permit him to perform the duties thereof, though he was ready, willing and able to perform such duties, and during all said time that he served as president of said corporation he devoted to the duties of said office the same amount of time and attention, approximately, that he had devoted to such office for the period of five years next preceding the date of said contract. Plaintiffs further aver that on, to-wit, April 18, 1898, said Kantzler held and still holds one hundred and ninety shares of the capital stock of said company, which he then desired and still desires to transfer to the said party of the second part for the sum of $50 per share, in accordance with the said contract, but the defendants would not, nor would they at said time or at any subsequent time, take and receive said stock and pay said Kantzler $50 per share, as provided by said contract. And the plaintiffs aver that two hundred and ten shares of the said stock, the residuum of said four hundred shares, belonged to said Nicolaus Stoll and Arnold Stoll, and on, to-wit, the 6th day of March, 1897, the said shares were by the said Nicolaus Stoll and Arnold Stoll sold and assigned, for value, to the said defendant Moses Bensinger. Plaintiffs further aver that said Kantzler has always been ready and willing to act as president of said corporation and perform all duties required of him as such officer, as required in said contract, and has always, since five years after the date of said contract, been able, ready and willing, and still is able, ready and willing, to deliver to said party of the second part said one hundred and ninety shares of said stock upon the payment to him of $9500; and plaintiffs aver that the said corporation has been wrecked and ruined in business under the direction and management of said party of the second part, and that said shares of stock now held by the plaintiffs are of no value. Plaintiffs further aver that the defendants have not paid said Kantzler said sum of $9500, and that the same, and interest thereon from

April 18, 1898, now remains due and unpaid, and that the salary of said Kantzler as president of the said corporation from and after February 12, 1897, to April 18, 1898, remains wholly unpaid, viz., $2366.65, and interest thereon from April 18, 1898, to the damage of the plaintiffs, for the use of said Kantzler, of $20,000."

The defendants filed the general issue, and the evidence fairly tended to support the material averments of the declaration, and after the proofs were in the defendants submitted to the court numerous findings embracing propositions which represented their contentions as to the law, but which the court declined to hold as the law of the case.

GEORGE W. WALL, and WILLIAM S. HAY, for appellant.

MORAN, MAYER & MEYER, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

The Appellate Court having reversed the judgment of the trial court without remanding and without making a finding of facts, it will be presumed in this court that the Appellate Court found the facts the same as the trial court, and that it reversed the case upon questions of law which it deemed could not be cured upon another trial; that is, it held that the facts as found by it and by the trial court were not sufficient, in law, to sustain the cause of action. This court will therefore inquire whether the facts found in the record are sufficient to sustain the cause of action set out in the plaintiff's declaration. *Hayes* v. *Massachusetts Mutual Life Ins. Co.* 125 Ill. 626; *Busenbark* v. *Saul,* 184 id. 343; *Wood* v. *Mystic Circle,* 212 id. 532.

The first contention made by the defendants is, that the agreement to pay the plaintiffs at least $50 per share for four hundred shares of the capital stock of the Garden City Billiard Table Company at the expiration of five years from the date of the contract referred to in the statement of facts pre-

ceding this opinion, is in contravention of section 130 of the Criminal Code, which reads as follows: "Whoever contracts to have or give to himself or another the option to sell or buy, at a future time, any grain, or other commodity, stock of any railroad or other company, or gold, or forestalls the market by spreading false rumors to influence the price of commodities therein, or corners the market, or attempts to do so in relation to any of such commodities, shall be fined not less than $10 nor more than $1000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts, and shall be void." (Hurd's Stat. 1903, p. 640.) And it is argued that the agreement to take and pay for said shares of stock is so qualified by the provision found in the contract, "that any one or more of said individuals comprising said party of the first part may have the option to retain his proportion of said four hundred shares," as to create only an option to sell said shares on the part of plaintiffs, which option, it·is said, by reason of the statute is rendered void. We do not agree with the construction placed upon said section of the statute by the defendants, but are of the opinion only contracts for options which are in the nature of gambling contracts fall within the prohibitions contained in said section. *Pixley* v. *Boynton,* 79 Ill. 351; *Pearce* v. *Foote,* 113 id. 228; *Minnesota Lumber Co.* v. *Whitebreast Coal Co.* 160 id. 85; *Wolf* v. *National Bank of Illinois,* 178 id. 85; *Ubben* v. *Binnian,* 182 id. 508; *Loeb* v. *Stern,* 198 id. 371; *Osgood* v. *Skinner,* 211 id. 229.

It appears that the defendants purchased from the plaintiffs a controlling interest in the Garden City Billiard Table Company, and agreed with plaintiffs they would purchase the four hundred shares of stock retained by the plaintiffs at its face value, which it was agreed should not be less than $50 per share, at the expiration of five years from the date of the contract, if the plaintiffs, or either of them, desired to sell their shares of stock at that price at that time. There is

nothing immoral or illegal in that feature of the contract or anything therein which partakes of the character of a gambling contract, and we see no reason why it should not be enforced if the plaintiffs, or either of them, accepted its provisions as to said unsold shares of stock at the expiration of the five years by offering to deliver to the defendants all of said stock or the part owned by either of the plaintiffs. True, the parties to whom the offer was made had the right to accept or reject the offer. When accepted, however, it became a binding contract, and such a contract as the courts will enforce.

In *Schlee* v. *Guckenheimer,* 179 Ill. 593, it was held a provision in a contract by which the purchaser of a quantity of grain was given the privilege of purchasing a certain additional quantity at the same price if taken before a certain day in the future was not such a contract as was prohibited by said section of the statute. On page 598 it was said: "The offer to sell such a commodity at a specified price, if accepted by a specified time, does not constitute a violation of the statute. Its acceptance within that time is not prohibited or made a criminal offense, but is an every-day transaction necessary in carrying on business," and the contract then under consideration was distinguished by the court from the contracts passed upon in the cases of *Schneider* v. *Turner,* 130 Ill. 28, and *Pope* v. *Hanke,* 155 id. 617.

The provision in this contract that the defendants would take the balance of plaintiffs' stock at the expiration of five years from the date of the contract, at not less than $50 per share, if the plaintiffs, or either of them, desired at that time to sell their stock, is found in a contract containing many other provisions, and doubtless was one of the considerations which moved the plaintiffs to part with a controlling interest in the corporation, and brings the case fairly within the principles announced in the cases of *Wolf* v. *National Bank of Illinois, supra, Ubben* v. *Binnian, supra,* and *Osgood* v. *Skinner, supra,* and distinguishes the contract from that class

of contracts which have been held to be vicious, as amounting only to options which are in the nature of gambling contracts.

It is next contended that the provision in the contract that the plaintiffs should hold the offices of president, secretary and treasurer of the Garden City Billiard Table Company for five years from the date of the contract at a salary of $2000 per annum each, is contrary to public policy and void. The contract was entered into by all the stockholders of the corporation, and while it might not have bound the board of directors afterwards elected, we think there is no reason in law why it should not be held to be binding upon the defendants and enforcible against them. The entire stock of the corporation was held by the plaintiffs, and in making a contract with the defendants whereby the latter were to obtain at once six-tenths of said stock, it was open to the parties to make any arrangements with regard to the management of the company mutually agreeable to them. The price to be paid for the stock was a matter to be determined by them, and by them only. They owned all the property represented by the stock, and the mere fact that it was represented by corporate stock could make no difference. No other person had any interest in it and no one else could complain. Instead of paying a different price than that agreed on for the stock not then to be transferred, it was mutually agreed that the plaintiffs should continue in their old official positions for five years, with an increase of salary.

In *Faulds* v. *Yates*, 57 Ill. 416, it was objected that an agreement between certain persons owning a majority of the stock of a corporation that they would elect the directors and manage the business was against public policy. There were other stockholders, but they made no objection. The court upheld the agreement, and on page 420 said: "There was no fraud in the agreement which has been so bitterly assailed in the argument. There was nothing unlawful in it. There was nothing which necessarily affected the rights and inter-

ests of the minority. Three persons owning a majority of the stock had the unquestioned right to combine, and thus secure the board of directors and the management of the property. Corporations are governed by the republican principle that the whole are bound by the acts of the majority, when the acts conform to the law of their creation. The co-operation, then, of these parties in the election of the officers of the company, and their agreement not to buy or sell stock except for their joint benefit, cannot properly be characterized as dishonest and violative of the rights of others and in contravention of public policy. * * * The agreement complained of was entered into by Faulds and his partners. The shareholders whom he is so solicitous to defend and protect have not complained. He cannot invoke their shield to fight imaginary wrongs. The transaction which he, through his counsel, denounces as fraudulent and nefarious was conceived and consummated by him as much as by his partners. Every motive which could influence a man for good should have prompted him to silence. If this combination was fraudulent and intended for bad purposes, the stockholders who are in a minority and who may have suffered have ample redress. We prefer to listen to them before any decision as to their wrongs." This case was cited and approved in *Higgins* v. *Lansingh,* 154 Ill. 301. And in *Lorillard* v. *Clyde,* 86 N. Y. 384, a contract between competitors in water transportation was entered into, whereby they agreed to consolidate under the form of a corporation. The management of the business was given to Clyde & Co., who were to receive the usual commission on all freight earned, and they guaranteed to Lorillard a seven per cent dividend for seven years. When Lorillard sought his dividends he was met by the contention that the contract was illegal, because it was an attempt to provide in advance for the control of the corporate affairs for seven years and to withdraw such control from the trustees and stockholders. To such contention the court replied, "But it is to be observed that the agree-

ment was between the parties who were to contribute the entire capital," and in the course of the opinion it was said: "I can see no objection, on the score of public policy, to an agreement between parties about to form a corporation, agreeing upon the general plan upon which it is to be organized and conducted, so long as nothing is provided for inconsistent with the provisions of the statute or immoral in itself," and the court held the contract to be legal.

It is suggested, by way of argument, that the stock is assignable, and that subsequent stockholders and creditors may be affected by said agreement. At the time the contract was made there were no other stockholders, and the contract provided the then creditors of the corporation should be paid in full, and they were paid. As held in *Faulds* v. *Yates, supra,* it will be time enough to consider the rights of subsequent stockholders and creditors of the corporation when they are before us complaining.

It is next contended that the trial court improperly excluded evidence tending to show defendants were stockholders in and that Bensinger was the president of the Brunswick-Balke-Collender Company, a rival corporation in the manufacture of billiard tables and billiard supplies of the Garden City Billiard Table Company, and that the purchase of a controlling interest in the latter company by the defendants was made with a view to stifle competition in and regulate the output of billiard tables and billiard supplies, which avoided the contract. The Appellate Court held the trial court ruled properly upon the question of the admissibility of said evidence, otherwise the case would have been remanded to the trial court for a new trial, to the end such error might be rectified upon a new trial by the admission of such excluded evidence. Had the defendants desired to have the ruling of the Appellate Court reviewed upon the question of the admissibility of said evidence they should have assigned cross-errors in this court. This they failed to do. The question, therefore, of the correctness of the decision of the Appellate Court in

approving the ruling of the trial court in excluding said evidence upon this record as it is framed is not open to review in this court. *Columbia Theatre Co.* v. *Adsit,* 211 Ill. 122.

It is also contended that the trial court erred in refusing to hold that the stock of the Garden City Billiard Table Company was not fully paid stock, and for that reason the defendants were not bound, in law, to accept one hundred and ninety shares of stock and pay therefor at least the sum of $50 per share, even though Kantzler tendered the same to them at the expiration of five years from the date of the contract. The question of whether said stock was fully paid stock was a question of fact, which was determined by the trial court adversely to the defendants, and which question of fact was found the same way by the Appellate Court. That finding of fact by the trial and Appellate Courts is binding upon this court and cannot here be reviewed.

From an examination of this record we are of the opinion the trial court properly ruled that the plaintiffs were entitled to recover for a breach of said contract in refusing to accept one hundred and ninety shares of said stock which were tendered to them by Kantzler at the expiration of five years from the date of said contract and pay therefor at the rate of $50 per share, and in refusing to pay to the said Kantzler the unpaid part of his salary as president of said Garden City Billiard Table Company from February 12, 1897, to April 18, 1898, and interest.

The judgment of the Appellate Court will be reversed and the judgment of the circuit court will be affirmed.

*Judgment reversed.*

Mr. CHIEF JUSTICE RICKS, dissenting.