Vincent Bendix, Appellant, v. Staver Carriage Company, Appellee.

## Gen. No. 17,460.

1. AGENCY—*what contract does not create.* A contract does not create an agency, though it is entitled "Agency Agreement" and purports to grant to plaintiff an exclusive right to sell defendant's motor cars in a specified territory for a certain time, where plaintiff is prohibited from making contracts or sales in defendant's name or behalf, or for its account, and must pay cash for cars on delivery, and defendant may collect from plaintiff's customers only on request and must immediately turn over the difference.

2. CONTRACTS—*mutuality.* A contract is mutual and binding on both parties thereto where it is apparent that plaintiff's agreement to maintain a sales office, to buy one of defendant's motor cars and keep it as a sample, and to use all reasonable efforts to sell such cars, formed an important part of the consideration for defendant's promises to furnish cars, to give an exclusive territory and to give a discount on all sales made therein by either plaintiff or itself.

3. CONTRACTS—*what not an option contract.* A contract is not void as an "option" contract under Crim. Code, § 130, where it provides for the sale of one motor car to plaintiff as a sample and for the sale of additional cars as he sells them to his trade within a specified time at a certain price, though plaintiff is given a "first refusal" on a certain number of cars a month, since such provision is incidental to the main transaction.

4. CONTRACTS—*when agreement is offer which cannot be withdrawn.* Where a contract provides for the sale of one motor car to plaintiff as a sample and of additional cars as he is able to sell them to his trade within a definite time at a certain price, the agreement is to be construed as an offer which, when accepted, becomes binding, but it is not a continuing offer which may be withdrawn by the seller at any time as to the part not accepted, where

plaintiff relying on the whole contract makes large expenditures and devotes time to building up a reputation and thereby creates a demand for the cars.

5. PLEADING—*what averment of tender of performance of contract sufficient.* There is a sufficient averment of tender of performance of a contract as against a general motion to strike out the claim as "unfounded in law," where such contract provides that plaintiff must take delivery or make deposit on a certain number of motor cars within a specified time and the statement of claim in the language of the contract specifies that plaintiff either took delivery or made deposit on such number within the time.

6. PLEADING—*statement of performance of contract.* Though a statement of claim for breach of contract does not show that plaintiff ordered a certain number of cars within a time specified by the contract, the court is not authorized to strike out the claim and dismiss the suit where it appears from the statement that plaintiff claims that defendant sold cars in his territory prior to the date fixed and thereby became liable to him for commissions.

Appeal from the Municipal Court of Chicago; the HON. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded. Opinion filed November 29, 1912.

BROTHERS & MILLS, for appellant.

BULKLEY, GRAY & MORE, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

After the appellant (plaintiff below) had filed a second amended statement of claim in the Municipal Court, that court, on motion of defendant, struck out such statement and dismissed the suit, on the ground "that the plaintiff's said claim is clearly unfounded in law." The question presented here is whether said amended statement of claim states a cause of action.

Said statement recites that the defendant is an Illinois corporation, having its principal place of business in Chicago; that on April 15, 1909, the plaintiff and defendant entered into a contract in writing, a copy of which is attached to the statement of claim. Said

contract is entitled "Agency Agreement" and provides that in consideration of one dollar and "the mutual covenants and agreements herein contained the parties hereto do mutually covenant and agree" as follows, in substance:

The Carriage Company on its part "grants and extends" to Bendix "the exclusive right to sell their Staver motor cars and chasses" in Chicago and all territory within fifty miles thereof "upon the following terms, namely: $50 cash deposit per car with each order, the balance being payable at the time delivery is made," less a discount of thirty per cent. from the regular list or catalogue price; said agreement to continue in force from the date thereof until September 30, 1910, unless sooner terminated by the company for a violation of any of its provisions.

Bendix, on his part, "agrees to pay for such motor cars upon the terms aforesaid;" to maintain a sales office in Chicago, and to keep in stock one car "as a sample to be used for exhibition or demonstration purposes;" to give the said Staver cars "at least equal representation" with any automobile handled by him; to "faithfully represent the same, and to use all reasonable effort to promote and increase their sale," and not to sell any of such cars outside of the specified territory without the company's consent; also "to take delivery of or make deposit on a total of at least ten Staver motor cars on or before the 31st day of December, 1909, otherwise this agreement shall immediately thereafter become null and void."

The agreement further provides that on all orders up to and including June 15, 1909, Bendix is to give the company at least forty-five days' notice prior to the date any car is "wanted for delivery," and after that date "orders are to be filled with reasonable promptness;" that between June 15, 1909, and December 31, 1909, Bendix is to have "the first refusal of at least five motor cars each month," and between January 1, 1910, and September 30, 1910, he is to have "the first

refusal of at least ten motor cars each month;'' also that the company, on the request of Bendix, ''will collect from any customer of the latter'' whatever amount or balance may be due him and at once remit to him the difference between the amount due to the company on the car sold and the amount collected from the customer therefor; also that the company will endeavor, so far as possible, to ''protect the interest of Bendix against any other dealer selling said Staver motor cars in territory assigned to'' him, and to ''reimburse'' him ''to the extent of commissions or discounts herein provided'' on any Staver motor cars sold by the company in his territory, except that the company reserves the right to sell one car to each of four named persons living in Chicago.

The agreement further states that ''it is expressly understood and agreed'' that Bendix ''is not in any manner authorized or empowered hereunder to conduct business in the name of or for the account of'' the company, ''nor in their name, nor upon their behalf to enter into contracts with or bill goods to third persons, except as herein otherwise provided, nor in their name nor upon their behalf to make promises or representations with respect to goods other than is contained in the catalogue and literature'' issued by the company.

After reciting this contract, the plaintiff's statement of claim then avers, in substance, that in pursuance thereof, plaintiff at once opened a sales office in Chicago and maintained the same during the life of said contract, at an expense of $2,200; that plaintiff gave the said Staver motor cars exclusive representation and faithfully represented the same, by devoting all his time, efforts and energy to promoting the interests of said motor car, and creating a reputation therefor, and by employing assistants, agents and servants at great expense, to the knowledge of defendant, and with its advice, consent and co-operation; that he used all reasonable efforts to promote and increase the

sale of said cars by advertising, calling upon prospective buyers, demonstrating, and otherwise, at an expense to him of more than $1,000; that he at once gave an order to defendant, with a deposit of $50, for the manufacture and delivery to him of one car to be kept in stock as a sample and to be used for exhibition and demonstrating purposes, and when ready for delivery, he accepted it and paid for the same the sum of $1,200; that during the life of the contract, to the knowledge of defendant, plaintiff kept said car in stock as a sample and used it for exhibition and demonstrating purposes, at an expense of more than $100 a month; that on or before December 31, 1909, plaintiff "either took delivery of or made deposit on a total of at least ten of defendant's motor cars, that is to say, "that prior to December 31, 1909, plaintiff sold, took delivery of, and paid for five of defendant's cars, and on that date plaintiff,"in pursuance of the terms of said contract, offered and tendered to the defendant the sum of $250 legal tender, lawful currency of the United States of America, as a deposit, under the terms of said contract, on five of defendant's motor cars," which deposit, however, defendant refused to accept; that plaintiff did not conduct business in the name of or for the account of the defendant, nor enter into any contracts nor bill any goods to third persons in its name, nor make any promises or representations with respect thereto other than as contained in defendant's catalogue; that plaintiff at all times performed, and was ready and willing and offered to perform, all the covenants required by said contract to be performed by him, but that defendant at no time lived up to the terms thereof; that defendant did not deliver to plaintiff's customers any car within the time specified, but invariably delayed delivery, and at no time gave to plaintiff the discount agreed upon, but on one pretext or another made some extra charge in every case of sale, which plaintiff paid rather than lose the sale; that

about November 1, 1909, defendant refused to perform any part of said contract, and refused to deliver any car to the plaintiff, or his order, unless plaintiff would consent to a reduction of the commissions and discount to be allowed to him, and also to a reduction of the territory in which he was to have the exclusive sale of said cars; and that on January 2, 1910, defendant arbitrarily, and without right, pretended to cancel the contract, and thereafter refused to recognize it in any way. The statement then avers that by reason thereof, plaintiff was hindered from selling a great many, to-wit, 40 cars, on which his discounts and commissions would have been $500 per car; also that defendant, during the life of the contract, sold and delivered in his territory a great many, to-wit, 50 cars, upon which he is entitled to commissions amounting to $500 per car. The statement further avers that by a supplemental agreement, made May 14th, 1909, the rate of discount was changed from thirty per cent. to "20 and 10 per cent. figured according to the usual custom," from the list or catalogue price of such cars.

In support of the judgment of the court below, appellee's counsel maintain, in substance, that the agreement set out in the statement of claim does not create any agency but is merely a contract of purchase and sale; that when so construed, it is void for want of mutuality, and also because "it is a contract for an option" in violation of section 130 of the Criminal Code; and that even if it was a valid contract, the plaintiff's statement of claim fails to show that it was not "automatically terminated" by a failure, on plaintiff's part, to purchase, or become liable for the purchase, of at least ten cars on or before December 31, 1909.

We are disposed to agree with the contention that the contract does not create an agency. While it is true that it is entitled "Agency Agreement," and while it is also true that it purports to "grant" to the plaintiff an exclusive right to sell defendant's motor cars

in a specified territory for a specified period of time, yet most, if not all, of the other provisions of the contract are wholly inconsistent with, and repugnant to, any theory of agency. For example, Bendix is required to open a salesroom, to keep therein a sample car, and to use all reasonable effort to promote sales; but he is expressly prohibited from making contracts or sales in the name of the defendant, or for its account, or even "in its behalf." He is given the "exclusive right to sell" Staver cars in the prescribed territory, but he must "pay for such cars upon the terms aforesaid," viz.: cash on delivery. Even the sample car is required to be so paid for in advance. Defendant agrees that it will collect from *any customer of Bendix* the amount coming to him upon any car sold, but is only to do this upon his request, and in such case it must "at once turn over" to him the difference between the amount due from him to defendant on such car and the amount paid by the customer. In order to keep the contract alive after December 31, 1909, Bendix is required to "take delivery of or make deposit on" *i. e.* to purchase) at least ten cars on or before that date. It is apparent from these provisions, that the parties intended that Bendix should not act as the agent of defendant in making sales, but should act entirely for himself, in his own name and on his own responsibility; that he should buy outright from the defendant and pay cash on delivery for all such cars as his trade would require, which should not be less than ten cars during the period prior to January 1, 1910. The mere fact that the parties entitled their agreement an "Agency Agreement" does not make it such, even when followed by a grant of an exclusive right to sell, where it appears from the whole contract that the parties intended that the title to the property involved should pass to the alleged "agent" upon delivery. Alpha Checkrower Co. v. Bradley, 105 Iowa 537; Heywood v. Doernbecher Mfg. Co., 48

Ore. 359; Mack v. Drummond Tobacco Co., 48 Neb. 397; Peoria Mfg. Co. v. Lyons, 153 Ill. 427.

As to the question of mutuality, it is claimed by appellee's counsel, that although by the terms of the contract the defendant was bound, the plaintiff was not bound, and, therefore, it is said the contract is purely unilateral and void. It is urged that although by the terms of the contract defendant gave to Bendix an exclusive right to sell its motor cars in certain territory for a certain period and for a certain price, and also agreed to give him a specified discount on all sales made, either by himself or by defendant, during that time within such territory, yet the plaintiff on his part agreed to do nothing except at his election. We do not so construe the contract. Bendix expressly agrees to maintain a sales office in Chicago, to buy from the defendant and pay for one of its motor cars, and keep it "in stock as a sample to be used for exhibition or demonstration purposes," and to use all reasonable effort to promote the sale of defendant's cars. In view of the evident scope and purpose of the whole contract, it is apparent that these promises on the part of Bendix formed a very important, if not the most essential, part of the consideration for the promises of the defendant. The performance by Bendix of this part of the agreement necessarily involved the expenditure by him of both time and money in very considerable amounts. He could neither evade the performance of these undertakings on his part, nor elect not to perform them, without at once incurring a liabliity to the defendant for a breach of his contract. They were good and valuable considerations, and we are of the opinion that the contract was therefore mutual and binding on both parties thereto.

It is next claimed that the contract is an "option" contract and void under section 130 of the Criminal Code, and the case of Schneider v. Turner, 130 Ill. 28, and similar later cases are relied on. In Schlee v. Guckenheimer, 179 Ill. 593, the same claim was made

as to a contract by which Guckenheimer sold to Schlee "five cars of sample B barley at 62 cents a bushel, and five cars of sample C barley at 57 cents a bushel," with a further provision that if the samples are found satisfactory "Schlee has the privilege to order 10,000 bushels more of each grade same price, any time to December 31, 1887." As to the first part of the contract, relating to the sale of the samples, the court held it to be a contract of sale; and as to the privilege of ordering more of the same kind as the samples, the court said that this clause "is a *mere offer to sell* 10,000 bushels each of two different grades of barley, *according to sample,* at a specified price for each grade, *the offer to be accepted by a specified time.* The clause does not constitute a contract for an option, such as that in Schneider v. Turner, 130 Ill. 28. * * * This proposition or offer is similar to everyday business transactions among the people of this state with reference to every character of commodities *purchased for use.* The offer to sell such a commodity at a specified price, if accepted by a specified time, does not constitute a violation of the statute. Its acceptance within that time is not prohibited or made a criminal offense, but is an every-day transaction necessary in carrying on business. There is nothing in this contract that is prohibited by the laws of this state and hence it is not void." The same reasoning was applied, in Kantzler v. Bensinger, 214 Ill. 589, to a contract of sale of the controlling interest in a corporation containing a provision to the effect that the purchasers of the interest would also buy 400 shares of stock retained by the sellers, at a certain price at the end of five years, if the latter then desired to sell. The court there said (p. 596): "There is nothing immoral or illegal in that feature of the contract or anything therein which partakes of the nature of a gambling contract, and we see no reason why it should not be enforced if the plaintiffs, or either of them, accepted its provisions as to said unsold shares

of stock at the expiration of the five years by offering to deliver to the defendants all of the stock or the part owned by either of the plaintiffs. True, the parties to whom the offer was made had the right to accept or reject the offer. When accepted, however, it became a binding contract, and such a contract as the courts will enforce.''

In the present case, the parties made a definite contract for the purchase and sale of at least one motor car as a sample, with the further agreement on the part of the seller to sell to the purchaser such additional motor cars as the latter might be able to sell to his trade within a definite time at a stipulated price per car. There is nothing in this, that partakes, in any manner, of the character of a gambling transaction, and under the authorities above cited, the agreement must be construed as an offer, which, when accepted became a binding contract, for the sale and delivery to Bendix of the number of motor cars included in the acceptance.

But it is said that this contract contains a continuing offer, and that even if good as to the part accepted, it may be withdrawn at any time as to the part which was not in terms accepted. In view of the averments in the statement of claim to the effect that plaintiff, relying upon the whole contract, made large expenditures and devoted much time to building up a reputation, and thereby creating a demand, for defendant's machines, we do not think defendant would have any lawful right to thereafter withdraw its offer without liability for actual damages, if any, except for the reasons stated in the contract,—i. e., for violation of any of its provisions.

As to the claim that the giving of a "first refusal" of a certain number of cars per month constitutes an illegal option, the rule is well settled that where an option feature of this sort is found in a contract containing other provisions, and is only incidental to the main transaction, if the latter is a legitimate business

transaction, the option is not illegal.   Kantzler v. Bensinger, *supra*; Wolf v. National Bank of Illinois, 178 Ill. 85; Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85; Osgood v. Skinner, 211 Ill. 229.

It is last claimed that the plaintiff's statement of claim does not show that Bendix ordered a total of at least ten cars within the time limited by the contract, and that therefore it must be assumed that the contract ceased by its own terms to have any effect or force after December 31, 1909.   If this were true, it would not authorize the court to strike out the statement altogether and dismiss the suit, for the reason that it appears from the statement that the plaintiff claims that defendant itself sold cars prior to that date in the territory assigned to plaintiff, and thereby incurred a liability to plaintiff for discounts or commissions thereon.   We think, however, the objection to the statement is not well taken.   It states, in the language of the contract, that on or before December 31, 1909, plaintiff "either took delivery of or made deposit on a total of at least ten of defendant's motor cars."   This is sufficient as an averment of a tender of performance on the part of plaintiff, as against a general motion to strike out the whole claim as "unfounded in law."

After due consideration of the points and authorities submitted to us, we think the plaintiff's second amended statement of claim states a good cause of action and that therefore the court erred in striking it out and dismissing the suit.   We refrain from discussing the proper measure of damages in such a cause of action, as we do not regard that question as properly before us at this time.

The judgment of the Municipal Court will be reversed and the cause remanded.

*Reversed and remanded.*