**William F. Fitzgerald, Appellee, v. Albert L. Christy et al., Appellants.**

**Gen. No. 31,285.**

1. APPEAL AND ERROR—*scope of review on appeal from interlocutory injunction.* An interlocutory order granting an injunction will be affirmed, on appeal, unless it clearly appears that in issuing such order the court improperly exercised its discretionary powers.

2. INJUNCTIONS—*sufficiency of bill to warrant exercise of discretionary power of court to grant interlocutory order.* Facts alleged in bill asking temporary injunction to restrain defendants from taking any action in violation of agreement between complainant and defendants as sole stockholders of a corporation, which gave complainant power to veto any change in the officers" or salaries, or proposal to incur expense or pay dividends, and conditioned any change in by-laws upon a unanimous vote of the stockholders, held to show that the court did not abuse its discretion in granting the order.

3. CORPORATIONS—*validity of agreement between stockholders giving one veto power over change in corporate officers and financial policy.* Agreement between three sole stockholders of a corporation giving to one power to veto any change in the corporate officers or their salaries, or any proposal to incur expense or declare dividends, and prohibiting any change in the by-laws except by unanimous vote of the stockholders, held valid and binding as between such parties, being neither unconscionable nor contrary

to public policy and involving no violation of Cahill's St. ch. 32, ¶ 20, declaring what shall constitute a quorum for the transaction of corporate business.

4. INJUNCTIONS—*when breach of agreement between stockholders of corporation properly restrained by temporary injunction notwithstanding its possible invalidity.* It was within the discretion of the court to grant an interlocutory injunction restraining defendants from taking any further action in violation of an agreement between the complainant and defendants, as sole stockholders of a corporation, which gave complainant power to veto any change in the corporate officers or their salaries, or any proposal to incur expense or declare a dividend, and conditioned any change in the by-laws upon a unanimous vote of the stockholders, notwithstanding the possible invalidity of such agreement, where such defendants had illegally voted large salaries to themselves as officers, over complainant's protest; and were taking steps to oust complainant from the office he held and from any participation in the conduct of the corporation.

5. EQUITY—*sufficiency of verification of bill for temporary injunction.* A bill of complaint verified by the complainant personally, who made oath that he knew the contents of the bill "and that the same is true of his own knowledge, except as to the matters which are therein stated to be on information and belief, and that as to those matters, he believes them to be true," held sufficiently verified.

Appeal by defendants from the Circuit Court of Cook county; the Hon. WILLIAM V. BROTHERS, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Affirmed. Opinion filed November 17, 1926.

ERNEST D. MACDOUGALL, for appellants.

DELBERT A. CLITHERO and McNITT & McCORMACK, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

This is an appeal from a temporary injunction order entered on motion of the complainant on the bill of complaint filed by him the day previous to the entry of such order, the demurrer of the defendants to

said bill having been filed on the day the order appealed from was entered.

The facts alleged by the complainant in his bill of complaint were the following: In August, 1910, the complainant leased certain property, of which he was the owner, to one Sandow and the two defendants, Christy, in which said lessees proceeded to conduct a moving picture theater. That lease ran to September 30, 1913, at a rental of $175 a month. Sandow and the Christys could not get along together and they made an effort to sell their leasehold. In August, 1911, the Christys came to the complainant and told him that Sandow was about to apply for a receiver as a result of their inability to get along together and they stated that they did not have enough money to buy out Sandow's interest in the theater business, nor was Sandow in a position to purchase their interest, and they solicited the financial aid of the complainant, to enable them to work out the situation and continue the operation of the theater. This led to a number of interviews between the complainant and the Christys, and also Sandow. Mutual accusations of dishonesty were made by the Christys and Sandow. Sandow was about to institute legal proceedings, which he had threatened, when the complainant, at the solicitation of the Christys, agreed to buy out Sandow's interest in the moving picture project, and entered into an agreement with the Christys to conduct the theater through a corporation, one-third of which was to be owned by the complainant, and one-third by each of the two Christys.

Pursuant to the arrangement above referred to, the complainant entered into a contract with the two Christys, under date of August 3, 1911, reciting some of the facts to which reference has been made above, and under the terms of this contract complainant agreed to buy Sandow's interest in the moving picture theater, and it was mutually agreed that the in-

terest of Sandow in the lease above referred to should be assigned to the Christys, and they in turn should assign the lease to the corporation which the parties were to organize. In this contract the parties further agreed that in the conduct of the moving picture theater, which the parties were to continue by means of the corporation to be organized, the complainant should have complete charge of all receipts and ·disbursements, and that A. L. Christy should manage the theater and all the details of its conduct, other than those of a financial character. It was provided that the stock of the corporation was to be paid for in full by the assignment of the lease and the transfer of all the property of the then existing firm which had been conducting the theater, and that one-third of the capital stock was to be issued to each of the Christys and the complainant; that after the formation of the corporation complainant was to be elected treasurer, one of the Christys, as president, and the other secretary, and each was to be elected a director. It was further mutually agreed by the parties that none of them would sell any of his stock without first giving the other parties an opportunity to buy it, and that so long as the parties to the contract owned the stock, no change would be made in either the officers or the directors, and that certificates of stock should be transferable only with the consent in writing of all the stockholders and that the by-laws to be drawn up should contain a provision that no change was to be made in the salary of any officer of the company except by unanimous consent of the stockholders, and that the by-laws should further provide that no person be elected a director except by the affirmative vote of stockholders holding at least three-fourths of the stock, and that no dividend should be declared, except by unanimous vote of the directors and no obligations incurred unless authorized by the treasurer and one other officer. The contract also provided that A. L.

Christy should receive a salary of $25 per week as manager of the theater and that E. H. Christy and the complainant should render their services without any compensation other than their share of such dividends as might be declared. It also provided that such disagreements as might arise between the parties should be submitted to one Strickler, as arbitrator. No provision was made for a successor to Strickler. Since the parties entered into their contract, Strickler has died.

All the things mentioned in this contract between the parties, which were to be done by them in and about the organization of the proposed corporation, were done pursuant to the terms of the contract. The corporation was duly organized and is now the defendant Elmo Amusement Company. The complainant and the two Christys became the three directors of the company,—A. L. Christy, its president, and manager; E. H. Christy, secretary; and complainant, treasurer. The capital stock of the corporation was fixed at $5,000, and sixteen and two-thirds shares were issued to each of the three stockholders. The by-laws were duly prepared and adopted by unanimous vote of the three directors, containing all the provisions covered by the contract which the parties had previously entered into.

For the past fifteen years the complainant and the Christys have been conducting the moving picture theater in the premises of the complainant, under lease from him, and it has proven a very profitable venture. For several years last past the Christys have been receiving $20 per week as salary. In 1925 the total income of each of the Christys, in dividends and salary was a little over $10,000, and in the same year the complainant received, as dividends, about $9,000. Recently the Christys have been withdrawing money from the receipts of the theater for various purposes.

In 1925, they drew out a total of $157, designated as "supper money," and $1,100 as "expense money."

In 1912, the Christys urged the complainant to give the corporation a new lease for five years from and after the expiration of the then existing lease, that date being September 30, 1915. Although complainant alleges he had been offered a rental of $400, he agreed to execute the lease requested by the Christys, at a rental of $300, with the understanding that they should continue to conduct the moving picture theater in the premises under the terms of the contract which the parties had previously entered into. This lease was duly executed for the term beginning October 1, 1915, and expiring September 30, 1920. In 1919, upon request of the Christys, the complainant executed another lease at the same rental of $300 per month, again with the understanding that the business of conducting the theater should be continued in accordance with the terms of the contract,—this lease running for ten years from the date of the expiration of the previous one.

Complainant alleges that the various amounts the Christys have received for expenses, from time to time, designated as supper money and expense money, have been withdrawn by them in fraud of his rights. He alleges that without his consent and in violation of the terms of the contract, the Christys have used receipts from the theater, in buying an automobile and contracting for garage rent. While the allegations in the bill are not explicit on this point, it would seem that such amounts as complainant alleges were withdrawn by the Christys, contrary to their agreement and without complainant's consent, were withdrawn by them from the cash received before the receipts were turned over to the complainant as treasurer. It appears from the allegations in the bill that the cash taken in at the theater during the week was turned over to the complainant, as treasurer, on the follow-

ing Monday morning, up to which time it was in the custody of the Christys, as those in the active management of the theater.

In June, 1925, and again in June, 1926, the Christys urged the complainant to execute a new lease to the corporation, for a term beginning in November, 1930, at which time the present lease will expire. Complainant told the Christys that he would not consider a new lease when the present one had more than four years to run. He called their attention to the proposed widening of Western Avenue and the fact that he could not tell what effect that project might have on his property and that he might desire to sell it. A few weeks later the Christys notified the complainant of a special meeting of the board of directors of the Elmo Amusement Company, to be held at 9.30 a. m. on August 2, 1926, for the purpose of acting on proposed amendments to the by-laws, and fixing the salaries of officers for the ensuing year. At the same time complainant was notified of the annual meeting of the stockholders of the company, to be held at 11.00 a. m. on the same day, for the purpose of electing a board of directors. This notice stated further that following the stockholders' meeting, the newly elected board of directors would meet, for the purpose of the election of officers and the consideration of any other business that might properly come before the meeting. Complainant attended the special meeting of the board of directors, pursuant to the notice he had received, with his counsel, called the attention of the Christys to the contract which existed between the parties, and was told by them that they cared nothing about the contract, but that they proposed to change the by-laws so that the corporation might be run as other corporations were run. Complainant, through his counsel, notified the Christys that he would take such action as might be necessary to compel them to abide by the terms of the contract. The meeting was called to or-

der by A. L. Christy, as president, and he proceeded to read the minutes of the meeting, which had previously been prepared, reciting the adoption of the proposed amendment to the by-laws by a majority vote, and providing that the salaries of the president and secretary and treasurer be fixed at $15 per week. The complainant again called attention to the fact that the Christys were violating the terms of their contract with him, and he protested against the action which was being taken. The motions adopting the amendments to the by-laws and fixing the salaries were declared adopted, and the meeting adjourned. At eleven o'clock on the same day the annual meeting of the stockholders was convened with the same result, the two Christys and complainant being elected directors. It seems that no effort was made to convene a meeting of the directors, as such, but the parties, as stockholders, proceeded to elect A. L. Christy, president, E. H. Christy, secretary, and the complainant, treasurer; and resolutions were adopted creating the offices of manager and assistant manager and electing A. L. Christy to the first and E. H. Christy to the second, and providing that the salary of the manager was to be $150, and that of the assistant manager, $100 per week, "payable at the close of each week's business, from the receipts for such week." All these motions were adopted by the votes of the Christys,— complainant continuing to voice his protest against the action which was being taken.

Complainant alleges in his bill that immediately after the holding of these meetings, E. H. Christy told him that he and his brother had taken the foregoing action, securing large salaries for themselves, apart from their share of the profits in the form of dividends, because complainant had refused to execute a new lease to the company for the period beginning in November, 1930, and they "proposed to get as

much money as possible out of the enterprise while the present lease was in force."

On Monday morning, following the holding of these meetings, complainant, as usual, went to the theater to receive the receipts of the previous week, as treasurer. Upon his arrival there the Christys tendered him a receipt for $15 for his salary as treasurer, and requested him to sign it. Complainant declined to receive such amount as salary or to sign a receipt, contending that it was contrary to the terms of the contract which the parties had entered into. Thereupon, complainant alleges, A. L. Christy moved that the office of treasurer be declared vacant, E. H. Christy seconded the motion and A. L. Christy declared the motion carried and the office vacant, and stated that a special meeting would be held to elect a new treasurer. Thereupon, complainant was invited to leave the premises, and he was told by the Christys that they would change the locks on the doors and the combination of the safe; and they demanded of him that he turn over all the books and records which were in his possession as treasurer. Before complainant left the premises, workmen began changing the locks. Three days later complainant received a notice through the mails to the effect that a special meeting of the board of directors would meet August 21, for the purpose of acting upon the resignation of the treasurer and electing a new treasurer. Complainant and the two Christys, throughout the period of the existence of the Elmo Amusement Company, have been and still are the sole stockholders of the company.

The complainant filed his bill two days before the time appointed for the meeting at which it was proposed to elect his successor as treasurer of the defendant company. After setting forth the facts recited above, the complainant prayed for the appointment of a receiver, an accounting, a mandatory in-

junction requiring the Christys to return the amounts they had improperly withdrawn from the receipts of the defendant company, and an order enjoining them from interfering with the complainant in the performance of his duties as treasurer of the defendant company, and from declaring the office of treasurer vacant or attempting to elect some one to that office in complainant's stead, and also from paying any of the money belonging to the company to themselves or others, pending the appointment of a receiver. The complainant also prayed that the contract which the parties had been working under, signed August 3, 1911, be declared valid and binding and that the Christys be required to comply with its terms, or, in the alternative, that the lease on the premises in which the theater is located and operated be canceled.

As already stated, complainant filed his bill of complaint on August 19, 1926, and on the following day the defendants' appearance was filed and also a demurrer. On the same day the court entered the mandatory injunction involved on this appeal. By that order the court directed that pending further hearing of the case, the matter of conducting the business of the Elmo Amusement Company be continued by the complainant and the Christys as it had been prior to August 2, 1926, and that nothing be done by the Christys in furtherance of their action in changing the by-laws of the corporation on August 2; and ordered that the Christys refrain from interfering in any way with the complainant in the discharge of his duties as treasurer of the corporation. The order also restrained the Christys from drawing the salaries provided for in the resolutions purporting to have been adopted on August 2, pending the hearing of the cause on its merits.

Upon an appeal from an interlocutory order granting an injunction, the question for determination is whether the court below improperly exercised its dis-

cretionary powers in respect to issuing an injunction *pendente lite,* and unless it clearly appears that it has done so, the order should be affirmed. *New Ohio Washed Coal Co. v. Coal Belt Ry. Co.,* 116 Ill. App. 153. In our opinion, it is entirely clear from the bare recitation of the facts alleged by the complainant in his bill of complaint, that the trial court not only did not abuse its discretion in entering the order appealed from, but that such would have been the case if the motion for a temporary restraining order had been denied. The agreement of the parties, in so far as it gave complainant the power to veto any change in officers or salaries or any proposal to declare dividends or incur expenses, and the by-laws, in so far as they contained provisions to the same effect and required a unanimous vote to accomplish their amendment, were valid and binding as between these parties. *Faulds v. Yates,* 57 Ill. 416; *Kantzler v. Bensinger,* 214 Ill. 589; *Hladovec v. Paul,* 222 Ill. 254; *People ex rel. Matthiessen v. Lihme,* 193 Ill. App. 341; *Venner v. Chicago City Railway Co.,* 258 Ill. 523; *Wabash Ry. Co. v. American Refrigerator Transit Co.,* 7 F. (2d) 335; 2 Cook on Corporations (6th Ed.), art. 622, a, b, c. The three parties who entered into that contract owned all the property of the Elmo Amusement Company, and pursuant to the contract they became the owners of all the capital stock of the company, and, as pointed out in the first case cited above, the mere fact that the property, which all the parties owned, came to be represented by the corporate stock could not interfere with the fact that, being the sole owners of all the property, they were in a position to enter into any contract they saw fit, concerning the use of the property and its management, so long as they did not violate any law or interfere with public policy or the public good.

In *Kantzler v. Bensinger, supra,* the plaintiffs, as owners of all the capital stock of a corporation, en-

tered into a contract to sell six-tenths of it to the defendants for a stipulated price. The latter were thereby to become the owners of 60 per cent of the capital stock. By the terms of the agreement involving this sale, the defendants who were the purchasers of this stock, agreed that the plaintiffs should be reelected as officers of the corporation for a stated period of years and that their salaries were to be $2,000 a year each. The agreement entered into by these parties also covered the matter of dividends, it being provided that they were to be declared only for an amount not to exceed 10 per cent of the par value of the stock. By the terms of the contract the defendants agreed to purchase the remainder of the capital stock of the parties of the first part at the end of five years at its then book value, which it was agreed would not be less than $50 per share. Complaint was made by the plaintiffs, to the effect that this agreement had been violated in several respects by the defendants. The latter contended that the contract was contrary to public policy and void. In the course of its opinion, the Supreme Court said: ''The contract was entered into by all the stockholders of the corporation, and while it may not have bound the board of directors afterwards elected, we think there is no reason in law why it should not be held to be binding upon the defendants and enforceable against them. The entire stock of the corporation was held by the plaintiffs, and in making a contract with the defendants whereby the latter were to obtain at once six-tenths of said stock, it was open to the parties to make any arrangements with regard to the management of the company mutually agreeable to them. The price to be paid for the stock was a matter to be determined by them, and by them only. They owned all the property represented by the stock, and the mere fact that it was represented by corporate stock could make no difference. No other person had any interest in it and

no one else could complain." In this case the court referred to *Lorillard v. Clyde*, 86 N. Y. 384, where a contract was entered into by competitors in water transportation, whereby they agreed to consolidate under the form of a corporation. The management of the business was given to one of them who was to receive the usual commission on all freight earned, and who guaranteed to the other a stipulated dividend for a given length of time. When the latter endeavored to collect his dividends he was met with the contention that the contract was illegal because it was an attempt to provide in advance for the control of the corporate affairs of the corporation for a term of years and to withdraw such control from the stockholders. As to that contention the court said: "But it is to be observed that the agreement was between the parties who were to contribute the entire capital. * * * I can see no objection, on the score of public policy, to an agreement * * * upon the general plan upon which it is to be organized and conducted, so long as nothing is provided for inconsistent with the provisions of the statute or immoral in itself." The court held the contract was legal.

In *Hladovec v. Paul, supra,* a group of retail liquor dealers entered into an agreement, whereby they were to acquire the stock of an existing corporation, each party to the agreement being limited, in his holdings, to ten shares. In the course of its opinion in that case the Supreme Court said: "We see no reason why a number of persons in trade, such as vendors of beer, may not engage in manufacturing the beer they sell their customers, and to that end each contribute an equal portion of the capital used in the manufacture thereof, and share equally in the management of the business and the profits and losses incidental to the business. Such an arrangement would make the parties to the enterprise partners and the enterprise a partnership undertaking. If parties can thus agree

to carry on such an enterprise as a partnership, why may not they incorporate under the statute and carry the business on through the medium of a corporation? While an agreement limiting the number of shares which should be issued to each stockholder would not be binding upon the corporation, we know of no reason why it would and should not bind the parties to the agreement.''

In contending the contrary, defendants have called our attention to a large number of decisions in various jurisdictions. It would be impossible within the reasonable limits of an opinion, to analyze these cases or even any considerable part of them. In our opinion, all of them may readily be distinguished from the case at bar, on the facts presented. Typical of these cases are those of *Luthy v. Ream,* 270 Ill. 170; *Teich v. Kaufman,* 174 Ill. App. 306; *Morel v. Hoge,* 130 Ga. 625, and *Jackson v. Hooper,* 76 N. J. Eq. 592. In the *Luthy* case a voting trust agreement was entered into by the holders of 2,001 shares of the stock of a corporation, out of a total of 4,000 shares. By the terms of their contract the voting power of the stock was entirely separated from its ownership for a term of years, ''so that the real owners of the property are during that time entirely divested of its management and control or of any participation therein.'' The court held that this agreement was contrary to public policy and void, as stockholders could not be ''permitted to surrender all their discretion and will in the important matter of voting, and suffer themselves to be mere passive instruments in the hands of some agent who has no interest in the stock, equitable or legal, and no interest in the general prosperity of the corporation.'' In the course of its opinion in that case the court said: ''While the pooling of stock for the purpose of electing directors and officers and controlling the management and business of the corporation is not necessarily illegal, an agreement the pur-

pose and effect of which are to permit the affairs of the corporation to be managed by the determination of persons other than its stockholders or by a minority of its own stockholders is invalid,'' citing a number of decisions, some of which the defendants are here relying upon. No such a situation as the court commented on in that case is present here. The complainant, under the agreement between these parties, could not conduct the affairs of the Elmo Amusement Company as he chose, without regard to the wishes of the defendants. In other words, they did not submit the management of the affairs of the company to him under the agreement or under the terms of the by-laws. The most that the complainant could do was to veto any change in the status created by the agreement of the parties, and the by-laws adopted pursuant to that agreement.

Likewise, in the *Teich* case, *supra,* an agreement was involved which went very much further than the one presented in the case at bar. The court in that case said that the contract there involved ''was something more than an agreement to elect one another as directors, acquire control and management of the company, and secure options on one another's stock. The courts have frequently upheld contracts of such a character. But it was an agreement to bind and control their judgment as such directors without regard to the interests of the stockholders they represented. Under it, they were obligated as directors to pursue a definite course of action for a series of years, looking specifically to their profit as officials or employees of the company, regardless of the effect upon it or its stockholders.'' The court held that the contract involved in that case was invalid because its tendency was to prevent the parties to the contract, as directors, by whom under the statute the corporate powers are to be exercised, from faithfully performing the duties which devolved upon them in their repre-

sentative capacity. The court distinguished the contract they were there passing upon from those involved in *Faulds v. Yates, supra,* and *Kantzler v. Bensinger, supra,* pointing out that in the former case the agreement did not bind the parties to a specific course of action as directors; and that in the latter case the agreement was entered into by all the stockholders, which was not true of the agreement presented in the *Teich* case.

The agreement which was before the court in *Morel v. Hoge, supra,* contained provisions which enabled a minority to control the affairs of the corporation there involved, by dictating the majority of directors to be elected. The court held that contract void because it indefinitely deprived owners of stock of the power to exercise their right as well as their duty to other stockholders and to the public, to so vote in the election of directors as would in their judgment best promote the prosperity of the corporation and enable it to perform its duties. Here again it will be seen was a situation entirely different from that involved here.

In the case of *Jackson v. Hooper,* 76 N. J. Eq. 592, *supra,* two individuals having equal shares in an extensive business, acted through two different corporations in which there were boards of directors, containing members who were admittedly dummies. Ultimately, the two individuals fell out and were unable to agree as to the conduct of their business affairs, whereupon the dummies ceased to vote as such, and followed the wishes of one of the owners, as against the other. It was held that a court of equity did not have the power to control the property and the affairs of the two corporations to the extent of eliminating the corporate functions, as mere incidentals and disregarding the law governing the creation, supervision and dissolution of corporations, and treat the interest of the two owners on the basis of a partnership. This case presented some of the elements which were pres-

ent in other cases we have referred to, in that the parties attempted to create certain corporate directors who were to act without independent judgment and solely at the joint dictation and control of the two real owners of the business. As in the other cases, so in the *New Jersey* case, it was held that such an agreement was void and unenforceable. The agreement involved in the case at bar had no such features.

The defendants contend that the trial court erred in entering the temporary injunction appealed from because the contract recited by the complainant in his bill of complaint is not enforceable, and they urge that this is so because, among other reasons, it is contrary to the provisions of the statute which provides: "A majority of the directors elected shall constitute a quorum for the transaction of business." Cahill's St. ch. 32, ¶ 20. In our opinion it is immaterial what the agreement of the parties was or what the by-laws of their corporation provide as to a quorum of the board of directors, for that matter is not at all involved in the situation set forth in the bill of complaint or in the matters complained of by the complainant. At all the meetings of the board of directors which are here called in question, all members of the board were present. Apparently a further contention is made to the effect that the provision of the statute being what it is, the agreement of the parties and the provisions of the by-laws to the effect that salaries shall not be voted or changed except by unanimous vote of the directors, and that the by-laws shall not be amended except by such a vote, are invalid. In our opinion the fact that the statutes provide that a majority of the directors elected shall constitute a quorum for the transaction of business does not prevent all of the directors, who include all of the stockholders, agreeing that a unanimous vote shall be required on certain questions. As before stated, we are of the opinion that the agreement in writing to

which all of the stockholders and directors of the Elmo
Amusement Company were parties, and the provisions
of the by-laws of that company, which were adopted
by the affirmative action of all of them, in so far as
they provide that no salaries are to be voted or
changed, and further that said by-laws are not to be
altered or repealed, except by unanimous vote of said
parties, as directors, are neither unconscionable nor
contrary to the law nor against public policy. It is
apparent from the allegations in the bill of complaint
that the complainant was a man of some means, prop-
erty and credit. He was willing to help the Christys
out and put enough money into their venture to
eliminate the partner they had been unable to get
along with, and unite with them in conducting their
motion picture enterprise, upon condition that he
would have the handling of the finances of the theater,
and that he would have the same control over the ques-
tion of salaries, expenses and dividends, as they
would, so that dividends might not be declared nor
increases in salaries provided for, not only unless the
Christys agreed to it but, also, unless he agreed to it.
We are unable to see any reason why such an arrange-
ment, agreed to by all the parties, should not be car-
ried out. Nor are we able to see why the parties
should not be permitted to do it through the medium
of a corporation. If, in attempting to do that, they in-
cluded provisions in their by-laws which are directly
contrary to express provisions of the statute, to that
extent the by-laws may be invalid. It may be that they
included provisions in their agreement which could
be called in question by creditors or by the corporation
itself as a separate legal entity although not by any
of the parties to the agreement as individuals. But
such of the provisions of the contract between the
Christys and the complainant, and the by-laws of the
defendant company, later adopted by them, as are

involved in the facts set forth in the bill of complaint, are valid and enforceable, in our opinion.

However, even if we were to hold, as the defendants contend, that the contract of the parties was unconscionable and invalid, and therefore unenforceable, and the by-laws of the company illegal and void, we would, nevertheless, be of the opinion that the trial court did not abuse the discretion vested in it, by entering the temporary restraining order here appealed from. Even if, as the defendants contend, they cannot be compelled to continue to accept merely an equal division of profits, with the small salary provided for one of them in the contract, they may not be permitted to make a new contract with the complainant, to suit themselves, and compel him to comply with it. It is quite obvious that the large salaries which the two Christys voted to themselves, as directors, are entirely illegal, as the resolutions providing for them were adopted not only with the help of their votes but by their votes alone. Indeed counsel for the defendants admitted on oral argument that these salaries were not valid and legal. Without regard, therefore, to whether the contract of the parties is or is not enforceable, they having complied with its terms and conducted their business according to its provisions for fifteen years, and then, according to the allegations of the bill, the defendants having seen fit to vote themselves large salaries, in a manner which they admit to be contrary to the law, it could not be said that the trial court abused its discretion when it entered the order appealed from, providing that those salaries were not to be collected by the defendants and that they were not to interfere with the complainant in the performance of his duties as treasurer of the company, but that the parties were to continue the business in the manner in which they had been conducting it all these years, until the rights of the par-

ties may be determined in a hearing of their controversy on the merits.

Defendants contend that the bill of complaint is not sufficiently verified. The verification is by complainant personally, who makes oath that he knows the contents of the bill of complaint, "and that the same is true of his own knowledge, except as to the matters which are therein stated to be on information and belief, and that as to those matters, he believes them to be true." That verification is sufficient and proper. *George C. Peterson Co. v. Ashphalt Sales Corporation,* 235 Ill. App. 592; *National Plumbing & Heating Supply Co. v. Illinois Wood Preserving Co.,* 239 Ill. App. 69; *Farrell v. Heiberg,* 262 Ill. 407.

For the foregoing reasons, the order appealed from is affirmed.

*Order affirmed.*

O'CONNOR, J., concurs.

MR. PRESIDING JUSTICE TAYLOR specially concurring: I concur in the judgment of the majority opinion, but not in all the reasoning therein expressed. I am of the opinion that it was reasonable for the chancellor, by a temporary restraining order, to preserve the *status quo* pending a trial of the case on the merits.